[No. 26034-1-I.   Division One.   August 17, 1992.]

THE CITY OF SEATTLE, *Respondent,* v. KENNETH E.
YEAGER, *Petitioner.*

42

*Anita Paulsen* of *Seattle-King County Public Defender Association,* for petitioner.

*Mark H. Sidran, City Attorney,* and *Richard E. Greene, Assistant,* for respondent.

BAKER, J. — We granted discretionary review of a superior court decision affirming the convictions of Kenneth E. Yeager in Seattle Municipal Court of driving with a suspended license and with expired license tabs. We affirm, concluding that RCW 46.16.710-.760, as applied herein, violate neither the Fourth Amendment nor Const. art. 1, § 7.

The statute authorizes the stop of a vehicle for inquiry into the status of its operator's license to drive, based on a tab on the vehicle's license plate indicating that the owner of the car was previously cited for not having a valid driver's license. Yeager was driving a car which bore such a tab and which was stopped by a police officer pursuant to RCW 46.16.710(3).[1] Yeager was the owner of the vehicle. A

---

[1] RCW 46.16.710(3) provides:

Any officer who sees a vehicle being operated with marked license plates may stop the vehicle for the sole purpose of ascertaining whether the driver of the vehicle is operating it in violation of [statutes prohibiting operation of

radio check indicated he had a suspended license. He was subsequently cited for driving with a suspended license.

The Municipal Court upheld the stop and found Yeager guilty, and the Superior Court affirmed.

STANDING

The courts below ruled that Yeager lacked standing to challenge the stop. In this court, the City concedes that Yeager has standing to raise both facial and as-applied challenges to the statute.

■ We do not agree that Yeager has standing to raise a facial challenge. Except in the limited area of electronic eavesdropping, *see State v. Salinas*, 119 Wn.2d 192, 829 P.2d 1068 (1992); *State v. Kadoranian*, 65 Wn. App. 193, 828 P.2d 45 (1992), or where First Amendment freedoms are involved, a reviewing court will generally consider only whether a statute is unconstitutional as applied to the facts of that case. *State v. Sigman*, 118 Wn.2d 442, 445-46, 826 P.2d 144 (1992) (declining to consider facial challenge; no First Amendment issue).[2] Thus Yeager's appeal is limited to an analysis of whether RCW 46.16.710-.760 are unconstitutional as applied herein.

---

a vehicle without a valid license]. Nothing in this section prohibits the arrest of a person for an offense if an officer has probable cause to believe the person has committed the offense.

The license plates of a vehicle are marked with a unique tab when the registered owner is arrested for a violation of one of the statutes prohibiting driving without a valid license. RCW 46.16.710(1). A new owner of a vehicle or an arrested owner whose driver's license has been reinstated may apply for new vehicle license tabs pursuant to WAC 308-96A-470. This ability to replace the marked tab removes this case factually from those holding that a criminal record may not be used as grounds to conclude an individual is presently engaging in a crime. *See, e.g., State v. Tocki*, 32 Wn. App. 457, 464, 648 P.2d 99, *review denied*, 98 Wn.2d 1004 (1982).

[2]*State v. Carver*, 113 Wn.2d 591, 781 P.2d 1308, 789 P.2d 306 (1989) also states that recent United States Supreme Court cases do not appear to limit facial challenges strictly to the First Amendment area, and sets forth three limited circumstances under which the United States Supreme Court would allow consideration of a facial challenge of a criminal statute. *Carver*, 113 Wn.2d at 599 n.2; *see also State v. White*, 97 Wn.2d 92, 97 n.1, 640 P.2d 1061 (1982) (setting forth four possible constitutional challenges to a stop and identify statute). None of these circumstances apply here, however.

WASHINGTON CONSTITUTION

■■ When there is an alleged violation of rights under both the United States and Washington Constitutions, this court will first independently interpret and apply this state's constitution. *Seattle v. Mesiani*, 110 Wn.2d 454, 456, 755 P.2d 775 (1988). An analysis under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) is necessary when it must be determined whether, in a given situation, the Washington constitutional provisions afford greater protection than the minimum protection afforded by the federal constitution. *State v. Reece*, 110 Wn.2d 766, 778, 757 P.2d 947 (1988), *cert. denied*, 493 U.S. 812 (1989); *Gunwall*, 106 Wn.2d at 61.

■ The Superior Court declined to consider the state constitutional claims because the defense presented no *Gunwall* analysis. Yeager contends that such an analysis is unnecessary because *Gunwall* applies only when the issue is whether the state constitution grants more protection than the federal constitution. He relies on *Mesiani*, in which it was determined that stops at fixed sobriety checkpoints violated both Const. art. 1, § 7 and the Fourth Amendment. Yeager has, nonetheless, provided a *Gunwall* analysis to this court. We hold that Yeager's failure to brief *Gunwall* below will not preclude our determining whether an analysis of the issue on independent state grounds is necessary. *See State v. McFadden*, 63 Wn. App. 441, 445-46, 820 P.2d 53 (1991) (addressing state constitutional issues after receiving briefing), *review denied*, 119 Wn.2d 1002 (1992).

■ We follow the holding in *State v. Boland*, 115 Wn.2d 571, 576, 800 P.2d 1112 (1990) that in the article 1, section 7 context it is necessary only to examine the fourth and sixth *Gunwall* factors as they apply to this case. *See McFadden*, 63 Wn. App. at 446.

The fourth factor is a consideration of preexisting state law. Although the precise issue facing the court in this case is one of first impression, our courts have examined related vehicle stop issues, such as fixed sobriety checkpoints. *Seattle v. Mesiani, supra*. Thus, our case law has demonstrated a

concern of our state citizenry relating to privacy in vehicles that would support our reviewing the issue on state grounds.

■ The sixth factor is whether the privacy interest here is a matter of particular state or local concern. The proper regulation of drivers on our state's highways is such a matter. There is no need for national uniformity on this issue. *See Gunwall*, 106 Wn.2d at 62.

■■ We therefore conclude that we should review this matter on independent state grounds. Any federal cases cited are for guidance and do not compel our result.

Washington's Constitution, article 1, section 7, provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." The question presented is therefore whether the defendant was unreasonably disturbed in his private affairs by the stop based on the marked license plate.

■ In order for an investigative stop to be valid under either our state or federal constitutions, the officer must have "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) (applied to state constitutional analysis in *State v. Kennedy*, 107 Wn.2d 1, 5, 726 P.2d 445 (1986)). No greater level of articulable suspicion is required for a car stop than for a pedestrian stop. *Kennedy*, 107 Wn.2d at 6 (citing *Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979)). Articulable suspicion is a substantial possibility that criminal conduct has occurred or is about to occur. *State v. Kennedy, supra.*

*Mesiani* held that fixed sobriety checkpoints at which all oncoming motorists were stopped without warrants or individualized suspicion of criminal activity violated both the United States and Washington Constitutions. *Mesiani*, 110 Wn.2d at 458.[3]

---

[3]The discussion as to the Fourth Amendment in *Mesiani* was dicta. Two years later, the United States Supreme Court upheld such a sobriety checkpoint under the Fourth Amendment in *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990).

■■ ■■ This stop is distinguishable from the stops in *Mesiani*, however. Here, the presence of the special tab on the license plate was a specific and articulable fact from which the officer could reasonably infer that there was a substantial possibility the driver of the vehicle did not possess a valid license. There was no such individualized suspicion present in the blanket stops in *Mesiani*. Although it is true that a validly licensed driver may endure an unwarranted stop under this statute, acts which are consistent both with criminal and noncriminal activity may justify a brief detention. *Kennedy*, 107 Wn.2d at 6. Thus, the investigative stop here was permissible under article 1, section 7.

Our conclusion is supported by the decisions of other jurisdictions. *See, e.g., Smith v. State*, 574 So. 2d 300 (Fla. Dist. Ct. App. 1991) (investigatory stop of vehicle permissible after determination by radio check that registered owner did not possess valid driver's license; driver stopped was not the owner); *People v. Barnes*, 152 Ill. App. 3d 1004, 1006, 505 N.E.2d 427, 428 (1987) (stop appropriate after random computer check indicated that owner of vehicle had suspended license; "[w]hile other people may drive an owner's vehicle, it is clear that the owner will do the vast amount of driving"); *State v. Mills*, 458 N.W.2d 395 (Iowa Ct. App. 1990) (stop valid where check done indicated owner did not have valid license; reasonable to infer vehicle was being driven by owner given absence of contrary evidence); *State v. Panko*, 101 Or. App. 6, 8-9, 788 P.2d 1026, 1027 (1990) (stop justified since it was reasonable for officer to suspect that driver of car was registered owner).

### FOURTH AMENDMENT

Under *Terry v. Ohio, supra*, certain investigative stops may be permitted under the Fourth Amendment without probable cause to support a full arrest. *See State v. Belieu*, 112 Wn.2d 587, 594, 773 P.2d 46 (1989) (interpreting *Terry* and setting forth criteria for permitting such stops); *State v. Williams*, 102 Wn.2d 733, 737-39, 689 P.2d 1065 (1984) (quoting *Terry*). A seizure has occurred within the meaning of the Fourth Amendment when, by means of physical force

or a show of authority, one's freedom of movement is restrained, *State v. Stroud*, 30 Wn. App. 392, 394-95, 634 P.2d 316 (1981) (citing *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980)), *review denied*, 96 Wn.2d 1025 (1982), even if the period of detention is brief and short of a traditional arrest. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975). This rule applies to the stopping of an automobile and the detention of its occupants. *Prouse*, 440 U.S. at 653.

*Prouse* held that stopping a vehicle to check the driver's license and automobile registration, where neither traffic or equipment violations nor suspicious activity preceded the stop, was unreasonable under the Fourth Amendment. *Prouse*, 440 U.S. at 663. On this basis, it was held in *State v. Marchand*, 104 Wn.2d 434, 437-38, 706 P.2d 225 (1985) that a "spot check" stop during which vehicles on a highway were stopped for the purpose of checking driver's licenses, vehicle registrations, and equipment violated the Fourth Amendment. The *Marchand* court discussed with disapproval dicta in *Prouse* that suggested blanket stops of all oncoming traffic might be permissible, and ultimately held that the Fourth Amendment requires that statutes authorizing vehicle stops must impose constraints such that the officer's discretion to make such stops is not unconstrained or unfettered. *Marchand*, 104 Wn.2d at 438-39.

RCW 46.16.710(3) complies with this requirement since it authorizes stops only of vehicles operated with license plates marked in the manner set forth in RCW 46.16.710(1). Further, the statute provides that the scope of the stop shall be limited to the sole purpose of ascertaining whether the driver has a valid license to operate the vehicle. Thus, an officer's initial decision to interfere with the suspect's freedom of movement, which is at issue here, *see Williams*, 102 Wn.2d at 739, is sufficiently constrained by the requirement that the vehicle stopped have the marked plate.

Recently, the United States Supreme Court held in *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990) that a highway sobriety checkpoint program, under which *all* vehicles passing through the checkpoint were stopped and the drivers examined for signs of intoxication, did not violate the Fourth Amendment. *Sitz*, at 451-52. The court applied a test balancing the individual's privacy expectations against the government's interests in deterring drunken driving. After determining the balance weighed in favor of the state program, the Court held the stops were consistent with the Fourth Amendment. *Sitz*, at 449-50, 455. *Delaware v. Prouse, supra,* was distinguished on the basis that the stops therein were random and that the State had presented no empirical data to demonstrate that the stops would be an effective means of promoting roadway safety. *Sitz*, at 454.

Based on *Sitz*, the Fourth Amendment basis for the holdings in *Mesiani* and *Marchand* are imperiled.[4] Nonetheless, the stop in this case is less intrusive than any fixed checkpoint stop because of the individualized suspicion created by the presence of the tab. Thus, the Fourth Amendment viability of the stop herein is not endangered by the debatable status of *Mesiani* or *Marchand.*

Our holding is consistent with *Brignoni-Ponce*, which prohibited under the Fourth Amendment stops of vehicles near the Mexican border to determine if the vehicle contained illegal aliens, where the only basis for the stop was the apparent Mexican ancestry of the vehicle occupants. *Brignoni-Ponce*, 422 U.S. at 885-86. On the other hand, such factors as erratic or evasive driving, or unusual aspects of the vehicle itself may provide reasonable suspicion sufficient to justify stopping a car in the border area. *Brignoni-Ponce*, 422 U.S. at 884-85. Similarly, here, it was an aspect

---

[4]*Mesiani* will survive since it rested primarily on Const. art. 1, § 7, as detailed above. *See Mesiani*, 110 Wn.2d at 458.

50

of the vehicle itself, the license tab, that provided the basis for the officer's reasonable suspicion to stop the vehicle.

In conclusion, we hold that no state or federal constitutional guaranties of privacy were violated by the enforcement of RCW 46.16.710 in this case, and we therefore affirm.

PEKELIS and KENNEDY, JJ., concur.

Reconsideration denied October 28, 1992.

Review denied at 121 Wn.2d 1027 (1993).