939 P.2d 223 (1997)
86 Wash.App. 822
The STATE of Washington, Appellant,
v.
Thomas L. LADSON, Respondent.
No. 20582-3-II.
Court of Appeals of Washington, Division 2.
July 3, 1997.
As Amended August 5, 1997.
*224 John M. Jones, Pros. Atty., Olympia, appointed for Appellant.
Robert Mason Quillian and Thomas Doyle, Olympia, for Respondent.
BRIDGEWATER, Acting Chief Judge.
The State appeals an order suppressing evidence arising from an arrest following a traffic stop that the trial court found to be pretextual. Following the United States Supreme Court, we hold that a traffic stop based upon probable cause does not violate the Fourth Amendment, regardless of the subjective intentions of the law enforcement personnel stopping the vehicle. Further, we reject Ladson's claim of heightened protection under Washington's constitution because the claim is not supported by authority or argument. We reverse.
The facts are undisputed. Officer Mack had heard rumors that Richard Fogle was involved in drug dealing. On October 5, 1995, Officers Mack and Ziessmer were on proactive gang control in Lacey when they noticed Fogle behind the wheel of a Chevrolet. Thomas L. Ladson was a passenger in the vehicle. Officer Ziessmer saw that the Chevrolet had expired license tabs. After the Chevrolet refueled and dispatch confirmed that the tabs had expired, the officers stopped the vehicle.
While on proactive gang patrol, Officer Mack's primary function does not include the regulation of routine traffic violations; Officer Mack does not pull over every car he sees with expired tabs; in fact, Officer Mack selectively enforces traffic violations depending on whether he believes there is potential for intelligence gathering in such stops. Officer Mack's motivation to initiate the stop of Fogle's vehicle was his suspicion about Fogle's dealings with illegal drugs.
During the stop, Officer Mack arrested Fogle after determining Fogle was driving with a suspended license. The officers asked Ladson to exit the car. During a search of the car incident to Fogle's arrest, the officers found a loaded gun, cash, and several baggies of marijuana in Ladson's jacket. Ladson was charged with two counts: one, possession of a controlled substance with intent to deliver while armed with a deadly weapon; and two, possession of a stolen firearm.
The trial court determined following a pretrial suppression hearing that
Officer Mack's selective enforcement of the traffic laws in this case, based on the ulterior purpose of intelligence gathering or gang-monitoring, constitutes an unconstitutional pretext search.... [A] reasonable officer on gang patrol would not have stopped Fogle's vehicle for the expired *225 tabs violation in the absence of some other purpose or reason.
The court ordered the evidence gathered against Ladson suppressed.

I

Fourth Amendment
Generally, a traffic stop does not violate the Fourth Amendment where the police have probable cause to believe a traffic violation has occurred. Whren v. United States, ___ U.S. ___, ___, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). Here, the police had probable cause to believe a traffic infraction had occurred when they observed Fogle's vehicle had expired license tabs. See RCW 46.16.010 (unlawful to operate vehicle without current vehicle license number plates). The subjective intentions of law enforcement personnel "play no role in ordinary, probable-cause Fourth Amendment analysis." Whren, ___ U.S. at ___, 116 S.Ct. at 1774.[1] Probable cause justifies a search and seizure and usually outweighs any private interest in avoiding police contact:
Where probable cause has existed, the only cases in which we have found it necessary actually to perform the "balancing" analysis involved searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interestssuch as, for example, seizure by means of deadly force, unannounced entry into a home, entry into a home without a warrant, or physical penetration of the body.
Whren, ___ U.S. at ___, 116 S.Ct. at 1776 (citations omitted).
The State contends the suppression order was in error. When we apply Whren to the facts of this case, the trial court erred when it determined that, under the Fourth Amendment, the subjective intent of the investigating officers invalidated an otherwise lawful traffic stop. The traffic stop was clearly justified; the subjective intent of the officers irrelevant under the Fourth Amendment; the manner of the search and seizure nothing if not ordinary. The trial court's error arose out of its misplaced reliance on State v. Chapin, 75 Wash.App. 460, 879 P.2d 300 (1994), review denied, 125 Wash.2d 1024, 890 P.2d 465 (1995), where Division One of the Court of Appeals adopted and applied a Fourth Amendment pretext rule since rejected by an unanimous United States Supreme Court. Whren, ___ U.S. at ___ _ ___, 116 S.Ct. at 1774-75.[2] Because the Chapin pretext rule is incorrect, it is not necessary to determine whether the trial court properly applied Chapin to the facts of this case.

II

Article I, Section 7[3]
Ladson contends that, even if the traffic stop did not violate his Fourth Amendment rights, it violated his rights under Washington's constitution. Ladson argues that article I, section 7 of Washington's constitution affords persons greater protection than the minimum protection afforded by the federal constitution. Ladson, however, never expressly describes which individual interest receives heightened protection from Washington's constitution. The State replies that Ladson's Gunwall analysis is insufficient to warrant judicial review.
Six nonexclusive criteria, outlined in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), must be examined to determine whether our state constitution provides greater protection than the federal constitution to individual privacy interests. State v. Carter, 127 Wash.2d 836, *226 847, 904 P.2d 290 (1995) (citing Gunwall, 106 Wash.2d at 64-67, 720 P.2d 808). The six nonexclusive criteria include (1) the textual language; (2) differences in text; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern. State v. Boland, 115 Wash.2d 571, 575, 800 P.2d 1112 (1990).
The purpose of these factors is twofold: first, to lend assistance to counsel where briefing might be appropriately directed in cases in which independent state grounds are urged; and second, to help ensure that if the court does use independent state grounds in reaching its conclusion it will consider the six factors to the end that the decision shall be based on well founded legal reasons and not by merely substituting its own notion of justice for that of duly elected legislative bodies or the United States Supreme Court.
Boland, 115 Wash.2d at 575, 800 P.2d 1112 (citing Gunwall, 106 Wash.2d at 62-63, 720 P.2d 808). Article I, section 7 has been interpreted to provide greater protection to individual privacy interests than parallel provisions of the United States Constitution. State v. Chrisman, 100 Wash.2d 814, 818, 676 P.2d 419 (1984); State v. White, 97 Wash.2d 92, 110, 640 P.2d 1061 (1982).
In other article I, section 7 challenges, the Supreme Court has adopted the Gunwall court's analysis of the first, second, third and fifth factors because they do not vary from case to case. See, e.g., State v. Goucher, 124 Wash.2d 778, 783, 881 P.2d 210 (1994); Boland, 115 Wash.2d at 575-76, 800 P.2d 1112. Thus, we consider independently in this case only the fourth and sixth factors.
The fourth Gunwall factor considers preexisting state law. Our case law has demonstrated a concern of our citizenry relating to privacy in vehicles that lends support to reviewing the issue on state grounds. City of Seattle v. Yeager, 67 Wash.App. 41, 45-46, 834 P.2d 73 (1992). But Ladson's primary contention relates to pretext, not to the justification for a traffic stop. Ladson, however, provides this court with no authority or argument to support his position that preexisting state law has demonstrated a concern of our citizenry related to pretextual stops.[4]
The sixth Gunwall factor examines whether the issue is one of state or local concern. Our courts have sacrificed national uniformity at times for greater protection of citizens where significant privacy concerns are at stake. State v. Audley, 77 Wash.App. 897, 903, 894 P.2d 1359 (1995). The proper regulation of drivers on our state's highways is a matter of particular state or local concern. Yeager, 67 Wash.App. at 46, 834 P.2d 73; see also Seattle v. Mesiani, 110 Wash.2d 454, 456, 755 P.2d 775 (1988) (sobriety checkpoints violate state constitution). But Ladson's contention relates to pretext, not to the justification for a traffic stop. Again, Ladson provides this court with no authority or argument to support his position that pretextual stops are a matter of particular state or local concern. We note that during oral argument Ladson referred to State v. Blumenthal, 78 Wash.App. 82, 895 P.2d 430 (1995). But in Blumenthal, Division One held that the pretext rule should not be interpreted more broadly under article I, section 7 of the Washington constitution than under the Fourth Amendment and that there was no reason to interpret the rule differently under article I, section 7 from the Fourth Amendment. 78 Wash.App. at 85-86, 895 P.2d 430.
An appellate court may decline to analyze the state constitution when a party fails to adequately brief or argue its suggested grounds for independent state constitutional review. Snedigar v. Hoddersen, 114 Wash.2d 153, 168, 786 P.2d 781 (1990); State v. Wethered, 110 Wash.2d 466, 755 P.2d 797 (1988). Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. State v. Johnson, 119 Wash.2d 167, 171, 829 P.2d 1082 (1992).
Parties raising constitutional issues must present considered arguments to this *227 court. We reiterate our previous position: "`naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" In re Rosier, 105 Wash.2d 606, 616, 717 P.2d 1353 (1986) (quoting United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir.1970)).
Johnson, 119 Wash.2d at 171, 829 P.2d 1082. Here, Ladson failed to cite to any Washington cases other than Chapin and Blumenthal and failed to describe with any particularity the interest he believes merits greater protection under Washington's constitution. We decline review.

III
In a footnote to his brief, Ladson contends that, in the event of a reversal, the trial court should be directed to consider other issues he raised below related to the search of the vehicle. But the trial court already addressed those issues, concluding that the officers could search all unlocked containers in the vehicleincluding Ladson's jacketincident to the driver's lawful arrest. Ladson could have raised his arguments on appeal. "A party may present a ground for affirming a trial court decision which was not presented to the trial court if the record has been sufficiently developed to fairly consider the ground." RAP 2.5(a). The record is sufficiently developed to consider other issues related to the stop and search but Ladson has provided no argument or authority for this court to address the issues.[5] The search of the automobile was clearly a lawful search incident to the driver's lawful arrest. The jacket was not a closed container in the vehicle, and its lawful search inevitably led to the discovery that Ladson was in possession of a gun and drugs. State v. Stroud, 106 Wash.2d 144, 152, 720 P.2d 436 (1986). We decline to mandate that the superior court reconsider the issue.

IV

Conclusion
In summary, the findings of fact do not support the trial court's conclusion that the pretextual stop violated Ladson's Fourth Amendment rights. See State v. Watson, 56 Wash.App. 665, 666, 784 P.2d 1294 (1990) (findings of fact and conclusions of law must be sufficient to withstand appellate scrutiny when standing on their own). Ladson has failed to support the notion that Washington's constitution affords heightened protection from the actual motivations of individual officers.
We reverse and remand.
ARMSTRONG and HUNT, JJ., concur.
NOTES
[1] "[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment." Whren, ___ U.S. at ___, 116 S.Ct. at 1774.
[2] The Chapin opinion holds that a stop is reasonable and, therefore, constitutional if a reasonable officer would have made the stop in the absence of an improper purpose. The reasonableness and propriety of the officer's conduct is determined in part by whether the officer adhered to or departed from standard or routine procedures. 75 Wash.App. at 468, 879 P.2d 300. The Whren opinion rejects the "standard or routine procedure" test as "virtual subjectivity." ___ U.S. at ___, 116 S.Ct. at 1775.
[3] "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. I, § 7.
[4] This is not to say that our citizenry and courts do not evince concern where our laws are applied in an intentionally discriminating manner in violation of equal protection. See, e.g., Whren, ___ U.S. at ___, 116 S.Ct. at 1774; State v. Barber, 118 Wash.2d 335, 345-46, 823 P.2d 1068 (1992). This case involves no equal protection violation.
[5] Ladson argued the length of the detention exceeded the legitimate scope of a lawful stop to investigate and issue a citation for expired vehicle tabs. But the stop led to the officers' prompt discovery that Fogle was driving with a suspended license. At this point, the legitimate scope of the stop properly expanded. Ladson's argument is without merit. Ladson also argued that the search and seizure of him and his personal effects were unlawful. Whether Ladson's brief detention and patdown were lawful is irrelevant the search of unlocked containers in the car incident to Fogle's arrest led the police to discover the gun and the drugs in Ladson's jacket. The search and inevitable discovery of a gun and drugs in Ladson's personal effects led directly to Ladson's arrest. The lawfulness of the search and seizure is supported by State v. Stroud, 106 Wash.2d 144, 152, 720 P.2d 436 (1986).