22 P.3d 293 (2001)
106 Wash.App. 157
STATE of Washington, Respondent,
v.
Dennis Ray PENFIELD, Appellant.
No. 19380-2-III.
Court of Appeals of Washington, Division 3, Panel Four.
May 8, 2001.
*294 Janet G. Gemberling, Spokane, for Appellant.
Kevin M. Korsmo, Andrew J. Metts, Deputy Prosecuting Attorneys, for Respondent.
SWEENEY, A.C.J.
Any police officer may stop a car registered to a person whose driver's license has been suspended or revoked. RCW 46.20.349. Here, an officer stopped a car registered to a woman whose license had been suspended. But as he approached the vehicle, he saw that the driver was a man, Dennis Ray Penfield. He nonetheless asked Mr. Penfield for his name and license. Mr. Penfield's license was suspended, and the officer found methamphetamines in his subsequent search of the car. The question before us is whether RCW 46.20.349 authorized the officer to request Mr. Penfield's name and driver's license even after he was certain the driver could not be the registered owner of the car he had stopped. We conclude that the statute did not authorize the officer's questions and reverse Mr. Penfield's conviction for possession of methamphetamine.

FACTS
Officer Kevin Vaughn ran a license check on a red Camaro's license number and found that the driver's license of the registered owner, Lisa Gariepy, was suspended. He signaled the driver to stop and followed him into a nearby parking lot.
Prior to the stop, Officer Vaughn did not have a clear view of the driver because the back window of the Camaro was tinted. He was only able to see that the driver had a ponytail. As he approached the car, Officer Vaughn immediately noticed that the driver was a man. He nonetheless asked the driver for his license. The driver responded that he did not have a licenseit was suspended. He identified himself as Dennis Penfield.
Officer Vaughn recognized Mr. Penfield's name and knew that he had an outstanding arrest warrant. He therefore had Mr. Penfield get out of the Camaro. He handcuffed him and searched him. Officer Vaughn found a bud of marijuana in a cigarette pack that he seized from Mr. Penfield. He then called for a K-9 drug search. The dog found a baggie with a large amount of methamphetamine located underneath the vehicle.
Mr. Penfield moved to suppress the drug evidence. The superior court denied his motion based on RCW 46.20.349. That statute permits a vehicle stop of a registered owner who has a suspended license:
Any police officer who has received notice of the suspension or revocation of a driver's license from the department of licensing, may, during the reported period of such suspension or revocation, stop any motor vehicle identified by its vehicle license number as being registered to the person whose driver's license has been suspended or revoked. The driver of such vehicle shall display his driver's license upon request of the police officer.
The court reasoned that because the initial contact was authorized by statute, Officer Vaughn had a "valid and limited ability from a legal perspective ... to further ask for identification and license from Mr. Penfield." Report of Proceedings (Apr. 13, 2000) at 42. The court found him guilty following a bench trial.

DISCUSSION
The narrow issue before us is whether Officer Vaughn could lawfully ask Mr. Penfield to identify himself when the basis for the stop was the license suspension of a female registered owner.
We begin by noting that statutes similar to RCW 46.20.349 have withstood constitutional scrutiny. See, e.g., City of Seattle v. Yeager, 67 Wash.App. 41, 834 P.2d 73 (1992). In Yeager, the defendant challenged RCW 46.16.710(3), which permits an officer to stop a vehicle with a marked tab. The mark indicates that the owner of the vehicle has violated one of the statutes prohibiting driving without a valid license. The court held that "the presence of the special tab on the license plate was a specific and articulable fact from which the officer could reasonably infer that there was a substantial possibility the driver of the vehicle did not possess a valid license." Yeager, 67 Wash.App. at 47, *295 834 P.2d 73. The stop is then a valid investigative stop that is supported by "`specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Id. at 46, 834 P.2d 73 (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). An investigative stop under RCW 46.20.349 (the statute under scrutiny here) is also constitutional then because the law enforcement officer has an articulable suspicion of criminal conducti.e., that the driver is the registered owner who has a suspended license.
Other jurisdictions have upheld stops even when the driver turns out to be someone other than the registered owner. But in those cases that determination (that the driver was someone other than the registered owner) was not evident from simply looking at the driver. See Village of Lake in the Hills v. Lloyd, 227 Ill.App.3d 351, 169 Ill. Dec. 351, 591 N.E.2d 524, 526 (1992); State v. Pike, 551 N.W.2d 919, 922 (Minn.1996); State v. Donis, 157 N.J. 44, 723 A.2d 35, 41-42 (1998); City of Tallmadge v. McCoy, 96 Ohio App.3d 604, 645 N.E.2d 802, 805-06 (1994).
In Tallmadge, the officer who stopped the vehicle recognized that the driver was not the owner as soon as he got up to the car window. 645 N.E.2d at 805. But there, the court was able to uphold the admission of evidence the officer thereafter obtained because, at that point, the officer smelled alcohol on the driver and observed that his eyes were red and watery. Id. These facts supported the officer's continued inquiries.
Here, Officer Vaughn could not point to any articulable suspicion of criminal activity on the part of Mr. Penfield, once it became evident that he was not the registered owner of the vehicle. The fact the registered owner was a woman and the fact the driver here was a man indicated conclusively to Officer Vaughn that the driver was not the person who the Department of Licensing had reported as having a suspended license.
Other facts indicating discrepancies between the description of the owner and the physical attributes of the driver may not be so conclusive as to negate the officer's reasonable, articulable suspicion. For example, slight differences in weight, height, or hair color do not eliminate the driver as the owner.
In State v. Chatton,[1] the court considered a similar situation. There, the officer stopped the defendant's vehicle because it had neither a front nor a back license plate. However, as the officer approached the defendant's vehicle, he saw a temporary license placard lying on the rear deck of the vehicle directly beneath the rear window. This display conformed with the applicable Ohio law. State v. Chatton, 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984). The officer nevertheless continued to the driver's window and requested the driver's license. A check revealed the license was suspended. After arresting the driver for that violation, the officer searched the vehicle and found a revolver under the driver's seat. Id. at 1237-38.
The court framed the issue as "whether the police officer has continuing justification to detain appellee and demand production of his driver's license once the police officer viewed the temporary tags lying on the rear deck of appellee's vehicle." Id. at 1239. The court held that once the officer's reasonable suspicion that the vehicle was not properly licensed was dispelled, he should have allowed the driver to leave. Id. at 1240. The officer could continue to detain the driver only if some other fact gave rise to an articulable suspicion of criminal activity. Id. at 1240-41.
Here, Officer Vaughn's only articulable suspicion of criminal activity was information that the driver's license of the vehicle's owner was suspended. He had no other reason to ask Mr. Penfield for his driver's license after he realized Mr. Penfield was not the registered owner. Other facts may exist to create a suspicion that the driver may not have the owner's permission to use the automobile or that the driver is engaged in some other criminal activity. Officer Vaughn had none to offer here. Officer Vaughn violated Mr. Penfield's Fourth Amendment right to be free of unreasonable searches and seizures *296 when he asked Mr. Penfield to produce his driver's license.
We reverse the conviction and dismiss.
WE CONCUR: SCHULTHEIS and KATO, JJ.
NOTES
[1] 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984).