2015 JAN 20 PM 12: 19


# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
)  No. 71196-2-I
Respondent, )
)  DIVISION ONE
v. )
)
BRADLEY D. MCALLISTER, )  UNPUBLISHED OPINION
)
Appellant. )  FILED: January 20, 2015

SPEARMAN, C.J. — Bradley McAllister was charged with unlawful possession of methamphetamine. He moved to suppress evidence discovered during a search incident to his arrest. McAllister was stopped after a random license plate check on the car McAllister was driving showed an arrest warrant for a man named Bradley McAllister who was "associated" with the vehicle. The vehicle was registered to a woman, Shakinah McAllister. Following the stop, McAllister was arrested on the warrant and drugs were found on his person and in the car in the search incident to arrest. He appeals, claiming that the stop was not justified by a reasonable, articulable suspicion that he was engaged or about to engage in any criminal activity or that he was the person named in the warrant. We agree and reverse McAllister's conviction.

## FACTS

On July 6, 2012 Whatcom County Sheriff Deputy Jacob Hubby randomly checked the license plate No. ADD2958 with the Department of Licensing

database. The license plate information corresponded to a 1995 Chevrolet Lumina registered to a woman named Shakinah McAllister. The information also listed a warrant for Bradley McAllister for driving while license suspended in the third degree and failure to transfer title within 45 days. The information also included McAllister's date of birth.

After he received the information and the specifics about the warrant, Deputy Hubby followed the vehicle and noticed that the driver was male. Deputy Hubby had not met McAllister before, but was able to confirm his identity during the stop, either through obtaining his license or through conversation. McAllister was then placed under arrest, and drugs were found on both his person, in a search incident to arrest and in the car in a consensual search.

On July 12, 2012 McAllister was charged with unlawful possession of a controlled substance, to-wit: methamphetamine, in violation of RCW 69.50.4013(1). He moved to suppress evidence of the drugs that were found on his person pursuant to CrR 3.6, and the motion was denied. McAllister was found guilty at a bench trial on October 28, 2013.

The case was set for sentencing on October 30, 2013 but the hearing was continued until November 18, 2013. By that time the deputy prosecutor who handled the case had retired. The findings of fact and conclusions of law from the CrR 3.6 hearing were entered. McAllister was sentenced to ten days in jail and another thirty days in a drug treatment program. Due to the original deputy prosecutor's retirement, findings of fact and conclusions of law regarding McAllister's conviction were not entered until June 25, 2014. CP 51-54.

DISCUSSION

McAllister argues that the stop was unlawful because Deputy Hubby did not have reasonable articulable suspicion that he was either engaging in unlawful conduct or that he was the person named in the warrant. He contends that because the stop was not based on any physical description, other than gender, or any other information that would have identified McAllister, at best, the deputy relied only upon a hunch that the driver was the person named in the warrant. The State argues that the specific facts justified the stop because the person named in the warrant had the same last name as the registered owner, the person was associated with the vehicle, and the warrant had been issued fairly recently. Based on these facts, the State argues that there was sufficient basis to detain the vehicle in order to identify the driver. Once that identification had been made, the searches were lawfully conducted incident to arrest.

We review a trial court's conclusions of law at a suppression hearing de novo. State v. Carter, 151 Wn.2d 118, 125, 85 P.3d 887 (2004). Neither party assigns error to the trial court's written findings of fact regarding the motion to suppress, so they are verities for the purpose of appeal. State v. Acrey, 148 Wn.2d 738, 745, 64 P.3d 594 (2003).

A warrantless search is unreasonable under both the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution, unless the search falls within one or more specific exceptions to the warrant requirement. State v. Ross, 141 Wn.2d 304, 312, 4 P.3d 130 (2000). The

State has the burden to prove that a warrant exception applies. State v. Vrieling, 144 Wn.2d 489, 492, 28 P.3d 762 (2001); State v. Ladson, 138 Wn.2d 343, 349-50, 979 P.2d 833 (1999). One such exception is that an officer may briefly detain a vehicle's driver for investigation if the circumstances satisfy the "reasonable suspicion" standard under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). State v. Bliss, 153 Wn. App. 197, 204, 222 P.3d 107 (2009). To justify a Terry stop under the state and federal constitutions, there must be some suspicion of a particular crime connected to the particular person, rather than a mere generalized suspicion that the person detained may have been up to no good. State v. Martinez, 135 Wn. App. 174, 181-82, 143 P.3d 855 (2006). The officer must have an "articulable suspicion," meaning "a substantial possibility that criminal conduct has occurred or is about to occur." State v. Kennedy, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). The officer must be able to identify specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. Bliss, 153 Wn. App. at 204 (citing Terry, 392 U.S. at 21). We determine the propriety of an investigative stop — the reasonableness of the officer's suspicion — based on the totality of the circumstances. State v. Snapp, 174 Wn.2d 177, 197-98, 275 P.3d 289 (2012).

At the time Deputy Hubby stopped the vehicle, he knew (1) the vehicle was registered to a woman, Shakinah McAllister; (2) there were no warrants for her arrest; (3) there was a warrant for a man named Bradley McAllister, who was "associated" with the vehicle; and (4) a man was driving the vehicle. Deputy Hubby testified that he obtained McAllister's name, gender, date of birth, and the

charges, but not any other information connecting the driver of the car to the person named in the warrant.[1] The parties dispute whether the deputy's knowledge of a recently issued warrant for a man "associated" with the vehicle, with the same last name as the registered owner, combined with the observation of a man driving the vehicle is enough to justify an investigatory stop.

Both parties rely on State v. Penfield, 106 Wn. App. 157, 160-1, 22 P.3d 293 (2001), to support their positions. In that case, we noted that an officer may stop a vehicle registered to a person whose driver's license has been suspended. RCW 46.20.349. A report of a registered owner's suspended license suffices for the articulable suspicion of criminal conduct required for a brief investigatory stop.[2] Penfield, 106 Wn. App. at 160-1. It is then appropriate and permissible for an officer to dispel his or her suspicion by identifying the driver. State v. Lyons, 85 Wn. App. 267, 271, 932 P.2d 188 (1997). "The law encourages officers to proceed on the reasonable suspicion that the registered owner of a vehicle is driving, absent some manifest reason to believe otherwise." State v. Phillips, 126 Wn. App. 584, 588, 109 P.3d 470 (2005). The suspicion is reasonable because "'[w]hile other people may drive an owner's vehicle, it is clear that the owner will do the vast amount of driving.'" Seattle v. Yeager, 67

---

[1] Deputy Hubby testified that there usually would be a physical description but he could not recall seeing it. Although the warrant information contained a description of Bradley McAllister, including his height, weight, hair and eye color, the deputy did not testify that he relied on the description when he made the decision to stop McAllister.

[2] We nonetheless disapproved the stop in Penfield because although the registered owner's license was suspended, she was a woman and the driver at the time of the stop was a man. Thus, once it became evident to the officer that the driver could not be the registered owner, there was no longer any lawful justification for the stop. Penfield, 106 Wn. App. at 161.

5

Wn. App. 41, 47, 834 P.2d 73 (1992), (quoting People v. Barnes, 152 Ill.App.3d 1004, 106 Ill.Dec. 121, 122, 505 N.E.2d 427, 428 (1987)). The State cites no authority for giving the same weight to an inference that a person who merely is "associated" with the vehicle, is also the current operator. Indeed, it was clear to Deputy Hubby that the male driver was not the registered owner, Shakinah McAllister.

Here, the only articulable suspicion of criminal activity was information that there was a warrant for a man named Bradley McAllister associated with the vehicle. The State did not provide any other facts that might create a suspicion that McAllister was the person named in the warrant. There was no testimony explaining why or how the name Bradley McAllister was associated with the driver or why such an association would give rise to an inference that he was likely the driver of the vehicle. Deputy Hubby testified that he was not familiar with McAllister before the stop and had no other reason to suspect that he was the person named in the warrant, other than that he was male.

At least one other jurisdiction has found reasonable articulable suspicion where the license check returned information about a person other than the registered owner, but in that case, the officer had additional information connecting the driver to the person named in the warrant. In State v. Loyd, 338 S.W.3d 863, 867 (Mo. App. W.D. 2011), the defendant claimed that the officer had no reasonable suspicion to justify stopping his vehicle because there was no indication that he owned the vehicle or that it was registered to him. However, the officer recognized Loyd as the driver from prior contact and the State presented

evidence explaining why Loyd's name and the warrant would be "'associated' with the vehicle or license plate." Id. The officer's partner explained how "warrants are assigned to the license plate numbers of vehicles in which the individual for whom the warrant was issued has previously been stopped and ticketed or arrested." Id. With the officer's recognition and the association with the vehicle, the Georgia court upheld the stop.

Here, Deputy Hubby could not point to any facts that established a substantial possibility that it was McAllister driving the vehicle, other than that he was the same gender as a person listed in the associated warrant. This is not sufficient to give rise to reasonable articulable suspicion of criminal activity on McAllister's part and to justify a stop to verify his identity. We hold that it was error to deny McAllister's motion to suppress[3] and reverse his conviction.

We reverse McAllister's conviction and remand for dismissal.

WE CONCUR:

Spearman, C.J.

Trickey, J.

Verellen, J.

---

[3] McAllister also assigns error to the court's failure to enter written findings of fact and conclusions of law with regard to McAllister's guilt and ultimate conviction for unlawful possession of methamphetamine. He argues that reversal or remand is required because the findings of fact and conclusions of law were not entered by the time he was required to file his opening brief on appeal. Findings of fact and conclusions of law were entered on June 25, 2014, however, without objection, and McAllister has made no showing of prejudice. We decline to reverse and remand on this basis.