[Cite as *State v. Lewis*, 2022-Ohio-3006.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2021-G-0034 |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Court of Common Pleas |
| JE'BREL D.T. LEWIS, | Trial Court No. 2021 C 000059 |
| Defendant-Appellant. | |

# O P I N I O N

Decided: August 29, 2022
Judgment: Reversed and remanded

*James R. Flaiz*, Geauga County Prosecutor, and *Nicholas A. Burling*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, Chardon, OH 44024 (For Plaintiff-Appellee).

*Rachel Ann Kopec*, 50 Public Square, Suite 1900, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Je'Brel D.T. Lewis, appeals his conviction for Improperly Handling Firearms in a Motor Vehicle in the Geauga County Court of Common Pleas, on the grounds that the court erred by denying his Motion to Suppress. For the following reasons, we reverse the decision of the court below and remand for further proceedings consistent with this opinion.

{¶2} On April 22, 2021, the Geauga County Grand Jury issued an Indictment, charging Lewis with Improperly Handling Firearms in a Motor Vehicle, a felony of the

fourth degree, in violation of R.C. 2923.16(B).

{¶3} Lewis filed a Motion to Suppress on July 30, 2021. He argued that reasonable suspicion to stop the vehicle he was driving based on the registered owner's license status terminated upon the officer determining he was not the registered owner and further actions taken to detain him were improper. The State's Response argued that the minimal intrusion of verifying the driver's identity and determining whether the vehicle was stolen was permissible.

{¶4} A suppression hearing was held on August 10, 2021, jointly with co-defendant Jessica Dunlap, at which the following testimony was presented:

{¶5} Patrolman Andrew Centrackio of the Chester Township Police Department testified that for the entirety of his shift on March 15, 2021, he was in a parking lot running random registration checks on passing vehicles. He entered the tag of a Kia Forte into the Law Enforcement Automated Data System (LEADS), which showed the registered owner, Jessica Dunlap, was a suspended driver. At that time, he had not yet observed the driver but had reviewed Dunlap's identifying information in LEADS, including her height, weight, and gender. Centrackio performed a traffic stop of the vehicle.

{¶6} Upon approaching the vehicle, Centrackio observed that the driver did not match Dunlap's description, whom he knew to be a white female, and was instead an African American male, later identified as Lewis. A female, later identified as Dunlap, was in the passenger seat. Centrackio informed Lewis that the reason for the stop was the invalid license of the registered owner. Centrackio asked Lewis if he had a valid license. Lewis responded that he believed his license was valid, pointed to the passenger, and stated he believed she had a valid license. Centrackio then asked for Lewis' license and

2

was provided a state identification card. The dash cam video recording shows that upon taking the identification, Centrackio indicated "if you're valid, you guys are good to go." Centrackio testified that he requested identification to document the driver in his report and to confirm that Lewis was legally able to drive the vehicle. Centrackio entered Lewis' information into LEADS and determined he had a suspended driving status and outstanding warrants.

{¶7} Since there was no valid driver, Centrackio contacted a tow truck for the vehicle. As the warrants indicated the potential that Lewis was armed, Centrackio asked him whether there was a weapon in the vehicle. Lewis confirmed that there was and, when asked of its location, he pointed to the front passenger side door compartment, said it was unloaded, and granted permission to enter the vehicle. A firearm was recovered as well as a loaded magazine.

{¶8} On August 11, 2021, the trial court issued an Order denying Lewis' Motion to Suppress. It determined that "the officer was confronted with a new potential for criminal activity even after discovering Dunlap was not driving this vehicle" and had grounds to question "if the registered owner of the vehicle was not driving it, then who was?" It found that detention of Lewis to determine his identity after a legitimate traffic stop was constitutional.

{¶9} Lewis entered a plea of no contest to the charge in the indictment on September 21, 2021. He was sentenced to a term of two years of community control and 14 days of residential community control in the Geauga County Safety Center.

{¶10} Lewis timely appeals and raises the following assignment of error:

{¶11} "The Trial Court Erred in denying Appellant's Motion to Suppress."

3

{¶12} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence," but "must then independently determine, without deference to the conclusion of the trial court [i.e., de novo], whether the facts satisfy the applicable legal standard." *Id.*

{¶13} The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article I, Section 14 of the Ohio Constitution affords the same protection. *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11.

{¶14} "'The touchstone of the Fourth Amendment is reasonableness'" and warrantless searches are unreasonable subject to a few exceptions. (Citation omitted.) *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 14 and 15. "One exception to the warrant requirement is a brief investigatory stop based upon reasonable suspicion of recent, ongoing, or imminent criminal activity." *State v. Luther*, 2018-Ohio-4568, 123 N.E.3d 296, ¶ 18 (11th Dist.), citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

{¶15} "[T]he detention of an individual by a law enforcement officer must, at the very least, be justified by 'specific and articulable facts' indicating that the detention was reasonable." *State v. Chatton*, 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984), citing *Terry*

4

at 21. A traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *State v. Anderson*, 11th Dist. Lake No. 2017-L-127, 2018-Ohio-2455, ¶ 15 ("[a]n investigatory stop must be limited in duration and scope and can last only as long as necessary for an officer to confirm the suspicion of criminal activity"). The principles in *Royer* are "designed to prevent law enforcement officers from conducting 'fishing expeditions' for evidence of a crime." *Wickliffe v. Hancock*, 11th Dist. Lake No. 2008-L-174, 2009-Ohio-4257, ¶ 18. If additional facts provide reasonable suspicion of criminal activity beyond that which led to the initial stop, "'the officer may detain the vehicle * * * for as long as the new articulable and reasonable suspicion continues.'" (Citation omitted.) *State v. Jackson*, 11th Dist. Lake No. 2011-L-107, 2012-Ohio-2123, ¶ 28. If there is a lack of reasonable suspicion or other constitutional grounds for a search and seizure, evidence obtained as a result must be excluded. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 181.

{¶16} On appeal, Lewis argues that although the initial stop was justified, the continued detention once the officer determined there was no violation of the law was contrary to his Fourth Amendment rights, citing in support the Ohio Supreme Court case of *Chatton*, *supra*. The State counters that some appellate districts have held that the possibility of a vehicle being stolen in these circumstances warrants the continuation of the stop to determine the identity of the driver.

{¶17} In *Chatton*, an officer stopped a vehicle for failing to display license plates but observed the plate lying below the rear window upon approaching the vehicle. The officer requested the defendant's driver's license, which was suspended, and

5

subsequently recovered a firearm in the vehicle. The Ohio Supreme Court held that since the officer "no longer maintained a reasonable suspicion" that the vehicle lacked a proper license or registration, detaining the driver to demand his license "is akin to the random detentions struck down by the Supreme Court." *Id.* at 63, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) ("stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment"). Further, it held that "[a]lthough the police officer, as a matter of courtesy, could have explained to appellee the reason he was initially detained, the police officer could not unite the search to this detention, and appellee should have been free to continue on his way without having to produce his driver's license." *Chatton* at 63. *See also State v. Venham*, 96 Ohio App.3d 649, 656, 645 N.E.2d 831 (4th Dist.1994) (police can lawfully request a license and registration as an investigative procedure following a lawful traffic stop "if the officer's suspicions of criminal activity have not been dispelled," but "if the suspicions that triggered the initial stop are dispelled and there has been no violation of the law, then the officer has no authority to demand the driver's license [or] registration papers") (citation omitted).

{¶18} This court has applied *Chatton* in circumstances where the officer realized the suspected crime had not been committed. *See State v. Cooke*, 11th Dist. Lake No. 98-L-160, 1999 WL 778378, *4 (Sept. 24, 1999) (once the officer determined upon approaching a vehicle that the temporary placard was visible and was properly displayed, he no longer had reasonable suspicion and could not further detain appellant to obtain identifying information regarding his driving status); *State v. Molek*, 11th Dist. Portage No. 2001-P-0147, 2002-Ohio-7159, ¶ 30-34 (where the officer mistakenly believed a license

6

plate was obstructed by snow since the letter "E" was actually an "F," the officer did not "investigate the cause of the stop" and examine the license plate but, rather, asked the defendant for his license and registration, the evidence obtained following questioning was properly suppressed).

{¶19} Here, Lewis does not dispute that there was reasonable suspicion to perform a stop of the vehicle once Patrolman Centrackio became aware that the registered owner had a suspended license. Several appellate districts in Ohio have held that an officer has reasonable suspicion to conduct a stop when he determines the license plate is registered to a person who is not permitted to drive, since the "officer can reasonably infer that the owner is driving the vehicle." *See State v. Jones*, 7th Dist. Belmont No. 03 BE 28, 2004-Ohio-1535, ¶ 11; *State v. Kingman*, 5th Dist. Ashland No. 02COA032, 2003-Ohio-1243, ¶ 11; *State v. Yeager*, 4th Dist. Ross No. 99CA2492, 1999 WL 769965, *5 (Sept. 24, 1999). There is no dispute that the sole justification for the stop was on this ground. However, upon approaching the vehicle, Centrackio immediately became aware that Lewis was not the registered owner given his gender and other identifying characteristics. Similar to *Chatton*, at that point, Centrackio no longer maintained reasonable suspicion of the crime for which the stop occurred. Although Centrackio testified that he wanted to verify that Lewis was licensed, in *Chatton*, the court indicated that when reasonable suspicion ceases to exist, there are no grounds to ask for identification. In the absence of reasonable suspicion, a request for identification would otherwise be impermissible since the law is clear that "random stops of vehicles to check the validity of the operator's driver's license" have been condemned. *State v. Ford*, 11th Dist. Lake No. 2000-L-130, 2001 WL 1647149, *4 (Dec. 21, 2001), citing *Chatton* at 61.

7

Centrackio testified that, in addition to seeking Lewis' identity to determine the validity of his license, he sought it to complete paperwork relating to the stop. No authority is cited by the State to support a finding that this provided a legally justifiable reason for continuing a stop when reasonable suspicion no longer exists.

{¶20} Although the facts justifying the stop in *Chatton* differ from the present matter, its holding has been applied under similar circumstances. In *State v. Brentlinger*, 5th Dist. Delaware No. 19 CAC 05 0032, 2019-Ohio-4989, an officer performed a random registration check on a vehicle and found that the registered owner, a female, had a suspended driver's license. Upon stopping the vehicle, the officer discovered that the driver was male. At that time, the officer asked for the driver's license and, as he was running a license check, detected the odor of alcohol on the driver. *Id.* at ¶ 14. The Fifth District, relying on *Chatton*, held that the officer "no longer maintained a reasonable suspicion" when he became aware that the driver's gender did not match that of the registered owner. It held that "[a]lthough the deputy could have explained to Appellant the reason he was initially detained," the officer "did not have an independent basis to extend Appellant's detention by asking Appellant to produce his identification" and exceeded the constitutionally permissible scope of the initial detention. *Id.* at ¶ 19. The same analysis applies in the present matter. Of note, the United States Supreme Court has also questioned the existence of reasonable suspicion where an officer observes that the owner's identity differs from the driver. It found: "[I]f an officer knows that the registered owner of the vehicle is in his mid-sixties but observes that the driver is in her mid-twenties, then the totality of the circumstances would not 'raise a suspicion that the particular individual being stopped is engaged in wrongdoing.'" (Citation omitted.)

*Kansas v. Glover*, __ U.S. __, 140 S.Ct. 1183, 1191, 206 L.Ed.2d 412 (2020).

{¶21} The State points to authority from other districts holding to the contrary. We decline to apply such authority and find it to be factually distinguishable.

{¶22} In *State v. Graves*, 9th Dist. Medina No. 2202, 1993 WL 261562 (July 14, 1993), the officer ran the vehicle's license plate and determined the registered driver, a male, had an outstanding warrant. Upon executing the traffic stop, the officer saw the driver was female, inquired as to why she was driving, and she responded that she was the owner's girlfriend. The officer requested her identification, she produced a county human services card, and he determined the driver's license was suspended. *Id.* at *1. The court determined that, having learned the vehicle was not being driven by the registered owner, "there is no prohibition against asking the identity of the driver. The possibility that a vehicle, not driven by the registered owner, is stolen permits this very slight intrusion." *Id.* at *2. In another Ninth District case, *State v. Metcalf*, 9th Dist. Summit No. 23600, 2007-Ohio-4001, the court found it was proper to ask for identification when a vehicle was stopped due to the owner's expired license, and the driver indicated the owner was his daughter. *Id.* at ¶ 2-3. The court again held there was no violation of the defendant's constitutional rights. *Id.* at ¶ 12. In *State v. Dowdell*, 8th Dist. Cuyahoga No. 90200, 2008-Ohio-3080, the Eighth District also held it was a "slight intrusion," due to concerns of a stolen vehicle, to request identification of the driver although it was known to the officer that the driver was not the owner whose license was suspended. *Id.* at ¶ 9.

{¶23} The foregoing cases stretch the bounds of *Chatton* and the general principle that reasonable suspicion ceases once the officer becomes aware the grounds for instituting the stop are no longer valid. The rationale provided in these cases is that once

9

Case No. 2021-G-0034

a vehicle is stopped, it is a "slight intrusion" to then ask for identification. The Ohio Supreme Court's decision in *Chatton* appears to be contrary to such a conclusion. *Chatton* specifically held that it was improper to ask for identification although the vehicle had initially been stopped on lawful grounds. It made no exceptions for "slight intrusions" following such a stop. *Chatton*, 11 Ohio St.3d at 63, 463 N.E.2d 1237.

{¶24} In particular, the conclusion that there is reasonable suspicion that a vehicle is stolen, advanced by the State and foregoing authority, stretches this concept beyond its logical meaning. Reasonable suspicion requires specific articulable facts warranting intrusion and "something more than an inchoate and unparticularized suspicion or 'hunch.'" (Citations omitted.) *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 20. It cannot be said it is uncommon for couples or even friends to drive each other's vehicles, or various other circumstances to arise wherein the registered owner may not be driving. To presume that any car not driven by its owner is stolen diminishes the value of the term "reasonable suspicion" and sets the bar for detaining individuals for further investigation incredibly low.

{¶25} This is particularly true here where there were no facts, other than the driver not being the owner of the vehicle, present to support a conclusion that the vehicle was stolen. The driver was not acting suspiciously and was cooperative with police. A female matching the owner's description, which the officer had reviewed prior to approaching the car, was present in the passenger seat. There were no signs of tampering with the vehicle and the stop was not committed because the officer witnessed activity demonstrating a theft may have occurred, such as speeding away from a location or evading the officer. Significantly, in *Chatton*, the court rejected as justification for continued detention the

10

officer's observation that, "in his experience temporary tags were occasionally used to conceal the identity of stolen vehicles and were otherwise used illicitly." *Chatton* at 61. The court held: "If we were to uphold the detention of appellee to check the validity of his driver's license upon the generalized statement that temporary tags are sometimes used in criminal activity, we would be sanctioning, in effect, the detention of the driver of any vehicle bearing temporary tags. We are unwilling to place our imprimatur on searches of the citizens of this state and their vehicles simply because of the lawful and innocuous presence of temporary tags. The potential for abuse if such a rule were in effect, through arrogant and unnecessary displays of authority, cannot be ignored or discounted." *Id.* at 62. To hold otherwise creates a slippery slope whereby suspicion arises from ordinary circumstances such as allowing another to drive one's vehicle.

{¶26} Further, even if the rationale of these courts were found to be persuasive, there are significant factual differences in *Metcalf* and *Dowdell*. In *Metcalf*, the officer was unaware of the owner's gender or identifying characteristics other than her name when the stop was conducted and the owner's name was not immediately identifiable as belonging to a certain gender (Rikki). *Metcalf*, 2007-Ohio-4001, at ¶ 2. Thus, the officer did not know immediately upon approaching the driver whether he was the owner of the vehicle, reasonably warranting further investigation. *Id.* at ¶ 8. In *Dowdell*, there were facts that could support a reasonable suspicion that the vehicle was stolen, thus providing potential grounds for continued detention, including that the vehicle had been in a known drug area and had driven away from a stop sign at a high rate of speed," suggesting that the occupants were trying to get out of view of the police." *Id.* at ¶ 3 and 9. In other words, there was more than inchoate or unparticularized suspicion, unlike in the present

Case No. 2021-G-0034

matter as indicated above. Further, unlike in *Metcalf*, the officer immediately knew when approaching the vehicle that the driver was not the owner.

**{¶27}** Several courts throughout the country have also reasoned that continued detention to request the driver's license in similar circumstances is improper due to a lack of reasonable suspicion. In *Holly v. State*, 918 N.E.2d 323 (Ind.2009*)*, the officer became aware the driver was not the owner due to his gender. The court found that "once it becomes apparent that the driver of the vehicle is not the owner then an officer simply has no reason to conduct additional inquiry" given that "[r]easonable suspicion to pull a car over does not confer unconditional authority to request the driver's license and registration." *Id.* at 325-326. In *State v. Penfield*, 22 P.3d 293 (Wash.App.2001), the court observed that, although "other facts may exist to create suspicion that the driver may not have the owner's permission to use the automobile or that the driver is engaged in some other criminal activity," in the absence of such facts, the driver may not be further detained once it is discovered his gender did not match that of the vehicle's owner. *Id.* at 295. *See also State v. Pike*, 551 N.W.2d 919, 922 (Minn.1996) ("if the officer knows that the owner of a vehicle has a revoked license and further, that the owner is a 22-year-old male, and the officer observes that the person driving the vehicle is a 50- or 60-year-old woman, any reasonable suspicion of criminal activity evaporates"); *State v. Coleman*, 890 N.W.2d 284, 301 (Iowa 2017) (continued detention to request identification was invalid where the officer discovered the registered owner was not the driver: "when the reason for a traffic stop is resolved and there is no other basis for reasonable suspicion, * * * the driver must be allowed to go his or her way without further ado"). In none of these cases did the courts find that concerns of a stolen vehicle arose.

12

**{¶28}** The State emphasizes that its argument that the holdings in *Graves*, *Metcalf* and *Dowdell* should apply is further justified by the public policy of keeping suspended drivers off of the road. However, as noted above, the law in relation to this issue, established by the Supreme Court, is that once reasonable suspicion terminates, there can be no request for identification. It does not make an exception for a policy of protecting against suspended drivers. As stated in *Chatton* and *Cooke*, random stops to determine a license is suspended, as well as extensions of otherwise legitimate stops to investigate a person's license status, are impermissible regardless of the benefits of preventing driving with a suspended license. *Chatton*, 11 Ohio St.3d at 61, 463 N.E.2d 1237; *Cooke*, 1999 WL 778378, at *2.

**{¶29}** As we have determined that the extension of the stop was improper once Centrackio recognized Dunlap was not the driver, evidence resulting from the continued detention, i.e., discovery of the firearm, must be suppressed. *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 181.

**{¶30}** The sole assignment of error is with merit.

**{¶31}** For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is reversed and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.

CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.

13

Case No. 2021-G-0034