STATE of Minnesota, Respondent,

v.

Joleen Marie GREYEAGLE, Appellant.

No. C9–95–1295.

Court of Appeals of Minnesota.

Dec. 19, 1995.

Hubert H. Humphrey, III, Attorney General, St. Paul, James R. Olson, Brown County Attorney, Michael H. Boyle, Assistant County Attorney, New Ulm, for Respondent.

Robert A. Docherty, Farrish, Johnson & Maschka, Mankato, for Appellant.

Considered and decided by CRIPPEN, P.J., and KALITOWSKI, J., and TOUSSAINT, C.J.

## OPINION

CRIPPEN, Judge.

Appellant was stopped by police solely because the car she was driving bore WX license plates, indicating that the plates were specially issued by the Commissioner of Public Safety pursuant to Minn.Stat. § 168.041 (1994). Appellant, arrested for driving without a license and driving a vehicle with revoked license plates, moved to dismiss the charges on grounds that the trooper's decision to stop her was not based on a specific, articulable suspicion of criminal activity. Appealing from her subsequent conviction, appellant challenges denial of this motion.

## FACTS

State Trooper Kevin Guggisberg stopped appellant Joleen Greyeagle after viewing the license plates on her vehicle, which began with the letters WX.[1] In Minnesota, license plates beginning with WX or WY are statutorily issued by the Commissioner of Public Safety to drivers or owners of cars whose regular plates have been impounded because of driving violations. Minn.Stat. §§ 168.041, subd. 6, 168.042, subd. 12 (1994) (license plate impounding statutes).[2] In order to qualify for special plates, an applicant must show that, although one of the vehicle's customary drivers is legally prohibited from driving, there is reason for another licensed driver to be using the car. Officer Guggisberg testified that he routinely stops all WX and WY licensed vehicles for the purpose of checking the status of the driver's license, and that he

did not rely on any other information as a reason for stopping appellant.

After stopping appellant, Officer Guggisberg learned that appellant's driver's license had been revoked after a DWI charge, and the vehicle's special plates, issued because of her husband's conduct, had been revoked after appellant's conviction for driving without insurance. Appellant was charged with driving without a license and driving a vehicle with revoked plates.

## ISSUE

Does the presence on a motor vehicle of specially marked license plates issued pursuant to license plate impounding statutes constitute specific and articulable suspicion adequate to justify a police officer in stopping the vehicle?

## ANALYSIS

### Standard of Review

■ The parties do not dispute the facts of this case; thus, we must determine, as a matter of law, whether Officer Guggisberg's observations provided a constitutionally adequate basis for stopping appellant. Our review of this legal issue is de novo. *Berge v. Commissioner of Public Safety*, 374 N.W.2d 730, 732 (Minn.1985).

### 1. Particularized Suspicion

■ The Minnesota and federal constitutions proscribe unreasonable government searches and seizures. Minn. Const. art. I,

1. The parties dispute whether appellant's plates were issued pursuant to Minn.Stat. § 168.041 or the very similar Minn.Stat. § 168.042. Under either section, a person's license is impounded after the commission of serious driving violations and special plates may be issued to allow another party to drive the vehicle. Precise identification of the statute involved does not materially affect our analysis of the constitutional issue raised by this case.

2. Minnesota Statute section 168.041, for example, provides:

Subd. 1. Driving after license invalidated. When a person is convicted of driving a motor vehicle after the suspension, revocation, or cancellation of the person's driver's license or driving privileges, the court shall require the

registration plates of the motor vehicle involved in the violation owned by the person or registered in the person's name to be surrendered to the court.

\* \* \*

Subd. 6. Special series plates. (a) A violator or owner may apply to the commissioner for new registration plates, which must bear a special series of numbers or letters so as to be readily identified by traffic law enforcement officers. The commissioner may authorize the issuance of special plates if a member of the violator's household has a valid driver's license, the violator or owner has a limited license issued under section 171.30, or the owner is not the violator and the owner has a valid or limited license or a member of the owner's household has a valid driver's license. Minn.Stat. § 168.041, subds. 1, 6 (1994).

§ 10; U.S. Const. amend. IV. An automobile stop constitutes a "seizure" for constitutional purposes, and police may not stop a motorist absent some particularized suspicion that the motorist is engaged in criminal activity. *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981), *quoted in State v. Kvam*, 336 N.W.2d 525, 528 (Minn.1983). Police must point to specific and articulable facts which, taken together with inferences from those facts including inferences made by police that might elude an untrained person, reasonably warrant the intrusion of stopping the vehicle. *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695, *quoted in Berge*, 374 N.W.2d at 732.

This case differs from other Minnesota cases finding articulable cause for an investigatory stop because nothing in the appearance of appellant's vehicle, appellant's identity, or appellant's behavior suggested to the officer a particular reason to suspect her of a legal violation. *Cf. State v. Johnson*, 444 N.W.2d 824 (Minn.1989) (police justified in stopping car after driver engaged in evasive driving behavior); *State v. Barber*, 308 Minn. 204, 241 N.W.2d 476 (1976) (police justified in stopping car where license plates were affixed to the vehicle in an unusual manner). Rather, when Officer Guggisberg stopped appellant he entertained only the general suspicion that some drivers will misuse the special WX or WY license privilege.

The state contends that the presence of special plates on appellant's car was sufficient to permit singling out the vehicle with suspicion about its operation. But the very reason WX and WY plates are issued is to allow lawfully licensed drivers to drive those vehicles. The state has presented no evidence that drivers with WX and WY license plates abuse their specially granted driving privileges. Absent such evidence, a police policy to stop every car bearing WX and WY plates is not particularized. Because Officer Guggisberg stopped appellant's car solely pursuant to his policy of stopping every WX or WY car, he did not have the required suspicion for making the stop.

The state cites a Washington Court of Appeals case in support of its position. In *City of Seattle v. Yeager*, the Washington court considered whether a police stop of a vehicle bearing statutorily issued special license plate tabs violated state and federal constitutional law. *City of Seattle v. Yeager*, 67 Wash.App. 41, 834 P.2d 73 (1992). The tabs at issue in *Yeager* were issued under a state statute similar to Minn.Stat. § 168.041, except that the Washington statute specifically provided that vehicles bearing the special tabs could be stopped by police even absent any other cause for suspicion:

> Any officer who sees a vehicle being operated with marked license plates may stop the vehicle for the sole purpose of ascertaining whether the driver of the vehicle is operating it in violation of [statutes prohibiting operation of a vehicle without a valid license].

1987 Wash.Laws, ch. 388, § 2 (expired July 1, 1993).

*Yeager* is distinguishable from this case. Unlike the Washington statute, Minn.Stat. § 168.041 does not explicitly condition receipt of WX or WY license plates on submission to routine police stops.[3] The Minnesota statute does require that WX and WY plates "bear a special series of numbers or letters so as to be readily identified by traffic law enforcement officers," but this language does not suggest the condition of use that is provided in the Washington statute. The Minnesota legislature may have wished to make WX and WY licensed vehicles identifiable to police for several reasons unconnected to any intent to permit police to make suspicionless stops of such vehicles; for example, the legislature could have intended to alert police to WX and WY vehicles so that officers might pay more attention to such vehicles, or follow them for longer periods of time to ascertain whether the driver appeared intoxicated, or run license checks on the cars or drivers. Should any of these actions lead to some individualized suspicion that the driver or

---

**3.** Had the Minnesota legislature elected, like the Washington legislature, to explicitly permit police to make suspicionless stops of WX and WY vehicles, we would be presented with the question of whether states may statutorily provide that special driving privileges be granted on the condition that the user enjoys lesser constitutional rights. Such is not the case before us.

vehicle is involved in criminal activity, police could at that point effect a lawful stop.

■ The policy of routinely stopping all such vehicles, followed by Officer Guggisberg in this case, constitutes a violation of the constitutional requirement that vehicles may not be stopped absent particularized police suspicion.

## 2. Suspicionless Stops

Where police have no particularized suspicion for an automobile stop, that stop may in rare instances nevertheless be lawful. In *Michigan Dep't of State Police v. Sitz,* the United States Supreme Court held that sobriety checkpoint stops, although suspicionless, are lawful under the Fourth Amendment if the stops pass a balancing test. *Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (citing *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)). The *Sitz–Brown* test provides that courts should balance (1) the gravity of the public concerns served by the stop, (2) the degree to which the stop advances the public interest, and (3) the severity of the interference with individual liberty. *Sitz,* 496 U.S. at 451, 110 S.Ct. at 2486. Finding that preventing drunk driving is a serious public concern, that the sobriety checkpoint at issue in *Sitz* effectively addressed that concern, and that the intrusion on individual rights by a short detention at a sobriety checkpoint is minimal, the Court upheld the constitutionality of the checkpoint in that case.

■ The Minnesota Supreme Court employs the *Sitz–Brown* balancing test in deciding the constitutionality of suspicionless stops, but has developed a narrower view of which stops pass that test than has the United States Supreme Court. Stressing the importance of the general constitutional guarantee that no person will be searched or detained absent some particularized suspicion, the Minnesota court held that the state must meet a high "burden of articulating a persuasive reason for departure" from that general guarantee. *Ascher v. Commissioner of Public Safety,* 519 N.W.2d 183, 186 (Minn. 1994). Thus the *Ascher* court found a sobriety checkpoint set up in Minnesota unconsti-

tutional under the Minnesota Constitution. *Id.* at 187.

■ In *Ascher,* the supreme court articulated the constitutional issue that arises in checkpoint stops, and the same issue arises in this case:

(T)he issue is whether the state has met its burden of articulating a persuasive reason for departure from the general requirement of individualized suspicion—as by showing, for example, (a) that it is impractical to require the police to develop individualized suspicion and that a departure from the individualized suspicion requirement will significantly help police achieve a higher arrest rate than they can achieve using more conventional means * * * and (b) that this outweighs the interest of ordinary citizens in not having their privacy or their freedom of movement interfered with by police investigators who do not have any reason to suspect them of wrongdoing.

*Id.* at 186. As in *Ascher,* there has been no showing that misuse of special plates cannot be policed without unlimited freedom to stop all "WX" or "WY" vehicles. And the proper user of such a vehicle is no less an ordinary citizen than other drivers. Premised on the rationale of *Ascher,* we conclude that Officer Guggisberg's stop of appellant, based solely on the fact that her vehicle bore a WX or WY license plate, did not pass the constitutional balancing test governing the constitutionality of suspicionless stops.

Central to the *Ascher* court's analysis was the fact that the state introduced no evidence that the number of citizens arrested during the sobriety checkpoint represented any increase over the number of arrests that would have been made by following the requirement of articulable cause. *Ascher,* 519 N.W.2d at 185–86. As in *Ascher,* the state in this case has presented no evidence that the policy of stopping all cars with WX or WY license plates is a more effective method of preventing unlicensed drivers from driving than the traditional method of stopping vehicles only after the officer has formed some particularized suspicion. Absent any such evidence, the state has failed to meet its burden of demonstrating the effectiveness of its suspicionless search policy.

Finally, we observe that the burden on individual freedom in this case is substantial. According to Officer Guggisberg's testimony of police policy, drivers who obtain WX or WY plates for the purpose of driving lawfully may be stopped every time any police officer glimpses their license plates. Often, motor vehicles pass through multiple jurisdictions in a short time, so that lawful drivers could feasibly be stopped several times in a single trip. The circumstances surrounding this case and similar situations do not justify this substantial intrusion into citizens' privacy rights.

## DECISION

We reverse the trial court and hold that a police stop of a appellant's vehicle based solely on the fact that appellant's vehicle bore special statutorily issued license plates violated appellant's constitutional right to be free from suspicionless searches.

**Reversed.**