STATE of Minnesota, Appellant,

v.

Troy Allen KRENZ, Respondent.

No. C7–01–558.

Court of Appeals of Minnesota.

Oct. 2, 2001.

Mike Hatch, Attorney General, St. Paul, MN; and G. Paul Beaumaster, Rice County Attorney, Jonathan C. Audette, Assistant County Attorney, Faribault, MN, (for appellant).

David Ludescher, Northfield, MN, (for respondent).

Considered and decided by
PETERSON, Presiding Judge,
AMUNDSON and ANDERSON, Judges.

## OPINION

PETERSON, Judge.

This pretrial appeal is from an order suppressing evidence obtained as a result of a warrantless search of a fish house. The state argues that because ice fishing is a pervasively regulated activity and a person engaged in a pervasively regulated activity has a reduced expectation of privacy in the premises where the activity is conducted, the warrantless search of the fish house pursuant to the regulatory scheme for fishing is within an exception from the Fourth Amendment warrant requirement. We affirm.

## FACTS

At around 11:30 a.m. on January 21, 2000, Conservation Officer Thomas Hemker approached a fish house on Cannon Lake in Rice County to determine whether the fish house was properly registered and the occupants had fishing licenses. Respondent Troy Allen Krenz owned the fish house. Hemker did not notice any unusual or suspicious behavior and saw that the required registration decal was on the outside of the fish house. Hemker knocked on the fish house, identified himself, and opened the door without waiting for a response to his knock.

Krenz and Christopher Gillen were in the fish house when Hemker entered. As

he entered, Hemker saw Krenz push down the trays in a tackle box and thought that Krenz was trying to cover up something. Hemker asked to see Krenz's fishing license. After searching for his license, Krenz told Hemker that he had lost it a few weeks earlier.

Hemker saw a small aluminum pipe, about five inches long and one half inch in diameter, lying next to the tackle box. The pipe appeared to Hemker to be a device that is used to smoke controlled substances. Because of prior contacts with Krenz, Hemker suspected that there was marijuana in the fish house. He asked Krenz where the marijuana was, and Krenz responded that there was no marijuana in the fish house.

Hemker then investigated the contents of the tackle box. He readjusted the tray and found an aluminum spoon that contained an off-white, rock-like substance. Krenz told Hemker that the substance was baking soda. Hemker then saw Gillen drop several containers into a hole through the ice. Hemker retrieved the items and asked Gillen what was inside them. Gillen said that they contained cocaine.

Krenz was arrested and taken to the law enforcement center where he was given a Miranda warning before speaking with an investigator. Krenz admitted that he smoked crack cocaine with the pipe found in the fish house, that the pipe belonged to him, and that the pipe contained cocaine.

Krenz was charged with one count of controlled-substance crime in the fifth degree. He moved to suppress all evidence obtained from him on the grounds that Hemker's entry into the fish house was unconstitutional and all of the evidence was obtained as a result of an unlawful search and seizure. Krenz also moved to suppress all evidence taken from the tackle box on the grounds that the seizure of the tackle box exceeded Hemker's statuto-

ry authority and Hemker had no constitutional authority to seize the tackle box without a search warrant. Finally, Krenz moved to suppress any statements he made on the grounds that the statements were the products of an illegal search and seizure.

The district court determined that Hemker's entry into the fish house was unconstitutional, suppressed all evidence derived from the entry, and dismissed the charge against Krenz.

### ISSUE

Did Hemker's entry into the fish house violate the Fourth Amendment of the United States Constitution?

### ANALYSIS

██ To prevail in a pretrial appeal from a suppression order,

the state must 'clearly and unequivocally' show both that the trial court's order will have a 'critical impact' on the state's ability to prosecute the defendant successfully and that the order constituted error.

*State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998) (quoting *State v. Zanter*, 535 N.W.2d 624, 630 (Minn.1995)). "[T]he critical impact of the suppression must be first determined before deciding whether the suppression order was made in error." *Id.*

Critical impact has been shown not only in those cases where the lack of the suppressed evidence completely destroys the state's case, but also in those cases where the lack of the suppressed evidence significantly reduces the likelihood of a successful prosecution.

*State v. Kim*, 398 N.W.2d 544, 551 (Minn. 1987). The trial court's order suppressing all evidence obtained as a result of Hemker entering the fish house will have a critical impact on the state's ability to suc-

cessfully prosecute Krenz because the order completely destroys the state's case.

When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence.

*State v. Harris,* 590 N.W.2d 90, 98 (Minn. 1999) (citation omitted).

■ The district court concluded that because Krenz had a legitimate expectation of privacy in his fish house, Hemker's entry into the fish house without consent, a warrant, probable cause, or an articulable basis for suspicion violated the Fourth Amendment of the United States Constitution. We agree.

The Fourth Amendment provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

■■ The basic purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967).

[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.

*Id.* at 528–29, 87 S.Ct. at 1731.

The United States Supreme Court has explained that

in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.,* one that has "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."

*Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (1998) (quoting *Rakas v. Illinois,* 439 U.S. 128, n. 12, 99 S.Ct. 421, 58 L.Ed.2d 387).

There is no dispute that Krenz had a subjective expectation of privacy in the fish house. And we find persuasive the trial court's reasoning that because the solid walls of a fish house provide visual privacy for a range of legitimate activities that can take place in a fish house, an expectation of privacy in a fish house is reasonable. Krenz owned the fish house, and it was properly on Cannon Lake. *See* Minn.Stat. § 97C.355, subd. 7 (1998) (specifying dates and times fish house may remain on ice). Krenz, therefore, was properly where he had a right to be, and there was no reason for him to think that anyone outside the fish house could see anything that happened inside the fish house. Under these circumstances, Krenz had a reasonable expectation of privacy in the fish house.

■ The state argues that the suppression order constituted error because under *New York v. Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), a person engaged in a pervasively regulated activity has a reduced expectation of privacy in the premises where the activity is conducted and a warrantless inspection of the premises pursuant to the regulatory scheme may be constitutionally permissible. The state contends that this carefully defined excep-

tion to the warrant requirement applies here because ice fishing is a pervasively regulated activity, and Hemker entered the fish house pursuant to Minn.Stat. § 97A.215, subd. 3(1) (1998), which is part of the state regulatory scheme for fishing. Therefore, the state concludes, Hemker's warrantless entry was constitutionally permitted.

In *Burger*, the Supreme Court considered whether a warrantless search of an automobile junkyard, which was conducted pursuant to a statute that authorized the search, fell within an exception to the warrant requirement for administrative inspections of commercial premises in a pervasively regulated industry. The court explained that

> the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes. An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable. This expectation exists not only with respect to traditional police searches conducted for the gathering of criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes. An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home. This expectation is particularly attenuated in commercial property employed in "closely regulated" industries. * * * "Certain industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise."

*Id.* at 699–700, 107 S.Ct. at 2642 (citations omitted) (quoting *Marshall v. Barlow's,*

*Inc.*, 436 U.S. 307, 313, 98 S.Ct. 1816, 1821, 56 L.Ed.2d 305 (1978)).

The Supreme Court concluded that

> where the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment.

*Id.* at 702, 107 S.Ct. at 2644.

■ In the context of a pervasively regulated business, a warrantless inspection will be deemed to be reasonable when three criteria are met: (1) there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made; (2) the warrantless inspection must be necessary to further the regulatory scheme; and (3) the certainty and regularity with which the inspection program is applied must provide a constitutionally adequate substitute for a warrant. *Id.* at 702–03, 107 S.Ct. at 2644.

Minn.Stat. § 97A.215, subd. 3(1), provides:

> An enforcement officer may, at reasonable times:
>
> (1) enter and inspect the premises of an activity requiring a license under the game and fish laws.

Krenz's fish house was the premises of an activity requiring a license under the game and fish laws. Minn.Stat. § 97C.355, subd. 2 (1998), requires a fish house to be licensed, and Minn.Stat. § 97C.301, subd. 2 (1998), requires a person to be licensed to take fish by angling. Also, Minn.Stat. § 97A.251, subd. 1(2) (1998), requires anglers to submit to inspection of licenses while fishing, and Minn.Stat. § 97C.355, subd. 3 (1998), provides:

> A person may not use a dark house or fish house unless the door is constructed

so that it can be opened from the outside when it is in use.

The state argues that Hemker's warrantless inspection of Krenz's fish house pursuant to Minn.Stat. § 97A.215, subd. 3(1), meets the three criteria set forth in *Burger* for being deemed to be a reasonable search. The state emphasizes that warrantless searches of fish houses are necessary to enforce the regulatory scheme for fishing and that the statutes permitting inspection of fishing licenses and requiring a fish house door to remain unlocked while the fish house is being used make it abundantly clear to fish house users that a conservation officer may be coming to check fishing licenses and fishing methods and to examine any fish that have been caught.

But in making this argument, the state fails to recognize that a warrantless inspection that meets the criteria set forth in *Burger* is deemed to be reasonable in the context of a pervasively regulated business. Krenz's ice fishing was not a business activity; it was a personal recreational activity. The United States Supreme Court has declined to extend the exception to the warrant requirement for administrative inspections of commercial enterprises in pervasively regulated industries to property that is not used in a regulated or licensed business.

In *Almeida–Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the United States Border Patrol stopped and searched an automobile that was 25 miles north of the United States border with Mexico. *Id.* at 268, 93 S.Ct. at 2537. The only asserted justification for the stop and search was a provision in the federal Immigration and Nationality Act that permitted warrantless searches of automobiles "within a reasonable distance from any external boundary of the United States." *Id.* (quoting 8 U.S.C.

§ 1357(a)(3)). A federal regulation defined "reasonable distance" as "within 100 air miles from any external boundary of the United States." *Id.* The Border Patrol had no warrant and no probable cause for the stop or search. *Id.*

In seeking a rationale for the validity of the search in *Almeida–Sanchez,* the government relied on cases dealing with administrative inspections, as the state does in the case before us. Two of the cases the government relied on, *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), and *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), "approved warrantless inspections of commercial enterprises engaged in businesses closely regulated by the Government." *Id.* at 270–71, 93 S.Ct. at 2538. The Supreme Court found these cases to be inapposite and explained:

> A central difference between those cases and this one is that businessmen engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade, whereas the petitioner here was not engaged in any regulated or licensed business.

*Id.* at 271, 93 S.Ct. 2535.

Like the petitioner in *Almeida–Sanchez,* Krenz was not engaged in any regulated or licensed business. Admittedly, Krenz was engaged in a regulated and licensed activity. But the state has not cited any authority that indicates that the exception to the warrant requirement for administrative inspections in pervasively regulated industries has ever been applied to permit a search of noncommercial property simply because a regulated and licensed activity is occurring on the property. Absent any such authority, we see no basis to apply this exception to permit the warrantless inspection of private property used for

noncommercial, personal recreational purposes.

The state argues that because violations of fishing regulations that occur in fish houses cannot be observed, prohibiting inspections of fish houses effectively precludes the state from enforcing its fishing regulations for a substantial portion of the year. A similar argument was made in *Camara v. Municipal Court*, in which the Supreme Court held that administrative inspections of dwellings for possible violations of a city housing code, "when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual." 387 U.S. at 534, 87 S.Ct. at 1733. In rejecting the argument that warrantless inspections were essential to effective housing code enforcement, the Supreme Court stated:

The final justification suggested for warrantless administrative searches is that the public interest demands such a rule: it is vigorously argued that the health and safety of entire urban populations is dependent upon enforcement of minimum fire, housing, and sanitation standards, and that the only effective means of enforcing such codes is by routine systematized inspection of all physical structures. Of course, in applying any reasonableness standard, including one of constitutional dimension, an argument that the public interest demands a particular rule must receive careful consideration. But we think this argument misses the mark. The question is not, at this stage at least, whether these inspections may be made, but whether they may be made without a warrant. For example, to say that gambling raids may not be made at the discretion of the police without a warrant is not necessarily to say that gambling raids may never be made. In assessing whether the public interest demands creation of a general exception to the Fourth Amendment's warrant requirement, the question is not whether the public interest justifies the type of search in question, but whether the authority to search should be evidenced by a warrant, which in turn depends in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search. It has nowhere been urged that fire, health, and housing code inspection programs could not achieve their goals within the confines of a reasonable search warrant requirement.

*Id.* at 533, 87 S.Ct. at 1733 (citation omitted).

Fish house inspections may be necessary to effectively enforce the state's fishing regulations. Presumably, that is why the legislature granted enforcement officers the authority to inspect fish houses. But the state has not explained why fish house inspections cannot achieve their goal if they must be conducted with a warrant.

## DECISION

 Because the exception to the warrant requirement for administrative inspections of commercial premises in a pervasively regulated industry does not apply to a search of private property used for a personal recreational activity, Hemker's warrantless inspection of Krenz's fish house violated the Fourth Amendment of the United States Constitution. The district court did not err when it suppressed all evidence obtained as a result of the warrantless inspection.

**Affirmed.**