STATE of Minnesota, Respondent,

v.

Joel Robert HENNING, Appellant.

No. C9–01–1985.

Court of Appeals of Minnesota.

May 28, 2002.

Gary A. Gittus, George F. Restovich & Associates, Rochester, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Terry L. Adkins, Rochester City

Attorney, Peter D. Magnuson, Daniel D. Derner, Assistant City Attorneys, Rochester, MN, for respondent.

Considered and decided by
SHUMAKER, Presiding Judge,
HARTEN, Judge, and WILLIS, Judge.

## OPINION

HARTEN, Judge.

Appellant challenges his conviction of driving after revocation and having no driver's license in his possession, arguing that special series license plates do not provide an articulable suspicion to stop a vehicle. He also argues that Minn.Stat. § 168.0422 (1998), authorizing traffic stops based solely on special series license plates, is unconstitutional under the Fourth Amendment to the United States Constitution and Article 1, Section 10, of the Minnesota Constitution. Because we conclude that appellant implicitly consented to these stops and that the statute is not unconstitutional, we affirm in part and reverse in part.

## FACTS

Minnesota law requires the impoundment of vehicle license plates when a vehicle's owner is convicted of driving after the revocation of a driver's license. Minn.Stat. § 168.041, subd. 1(a) (1998). Plates are also impounded if a vehicle owner gives another person permission to drive the vehicle, knowing that the other person's driver's license has been revoked. Minn. Stat. § 168.041, subd. 1(b) (1998). An owner or violator may apply for special series license plates if the owner or violator has a limited driver's license or if a family member has a valid driver's license. Minn.Stat. § 168.041, subd. 6 (1998). Minnesota law permits the police to stop a vehicle solely because the vehicle displays special series license plates. Minn.Stat. § 168.0422 (1998).

On 12 July 2000, an Olmsted County sheriff's deputy observed and stopped a car bearing special series license plate number WZ1066. Appellant Joel Henning, the driver, identified himself and stated that he did not have a valid driver's license. The deputy testified that appellant said, "he knew he could get stopped for [having the plates] * * * but [he was] under the impression that there had to be some other reason" for the stop.

The deputy ran appellant's name on his mobile communications terminal and discovered that appellant's driver's license had been revoked. The deputy then returned to the vehicle and issued appellant a citation for driving after revocation and for driving without being in possession of a driver's license. At an omnibus hearing, the deputy testified that the special series license plate was his only reason for stopping appellant's vehicle. Appellant argued that Minn.Stat. § 168.0422 was unconstitutional. The district court held the statute unconstitutional but found that the special series license plate provided the deputy with a reasonable and articulable suspicion of criminal activity to justify the stop.

The case was set for bench trial. Appellant stipulated to the facts contained in the police report and his driving record. The district court issued an order finding appellant guilty of driving after revocation and driving without a driver's license in possession. The district court order incorporated the earlier omnibus order. This appeal followed.

## ISSUES

1. Does an applicant for special series license plates implicitly consent to vehicle stops based on those plates?
2. Is Minn.Stat. § 168.0422 (1998) constitutional?

## ANALYSIS

### 1. Implied Consent to Stop

■ Whether an applicant for special series license plates implicitly consents to vehicle stops based on those plates is a question of law, which we review de novo. *See Frost Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984) (reviewing court need not give deference to district court's decision on purely legal issue).

A statute permitting police officers to stop vehicles bearing special series license plates to check the status of the driver's license has been construed to "explicitly condition receipt of [those] plates on submission to routine police stops." *State v. Greyeagle*, 541 N.W.2d, 326, 328 (Minn. App.1995) (footnote omitted) (referring to a Washington statute). Minnesota now has an analogous statute to which this construction is relevant.

■ We have previously upheld the state's authority to impound license plates. *See Knudson v. Comm'r of Pub. Safety*, 438 N.W.2d 423, 425 (Minn.App.1989) (applying Minn.Stat. § 168.041, subd. 3a (1988), and noting that public would benefit from impounding of vehicle registration plates of driver whose license was revoked three times within five years). Appellant does not contest the impounding of his plates. After impounding, appellant chose to apply for and display special series plates. By applying for and displaying those plates, appellant submitted to routine police stops of his vehicle; he told the deputy that he knew he could be stopped because of the plates.[1]

■ Those who operate motor vehicles within Minnesota are deemed to consent to tests of their "blood, breath, or urine for the purpose of determining the presence of alcohol, controlled substances, or hazardous substances." Minn.Stat. § 169.123, subd. 2(a) (1998). If operating motor vehicles within the state legally implies a driver's consent to blood, breath, or urine testing for a particular purpose, it is reasonable to infer that utilization of special series license plates likewise may legally imply the driver's consent to stops of the vehicle for a particular purpose. Minn.Stat. § 168.0422 (1998) permits stops of vehicles bearing special series license plates only for a particular purpose. We hold that application for and display of the special plates on a vehicle implies the driver's consent to stops of the vehicle for the purpose of determining whether the driver has a valid license.

### 2. Constitutionality of Minn.Stat. § 168.0422

■ Appellant argues that Minn.Stat. § 168.0422 is unconstitutional. Minnesota statutes are presumed constitutional and the power to declare a statute unconstitutional should be exercised with extreme caution and only when necessary. *In re Haggerty*, 448 N.W.2d 363, 364 (Minn. 1989). Evaluating the constitutionality of a statute is a question of law. *Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 722 (Minn.1999). Accordingly, this court is not bound by the district court's conclusions. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993).

Appellant relies on *Greyeagle*, 541 N.W.2d at 328–29, which held that the police stop of a vehicle based solely on the vehicle's special series license plates was unconstitutional. The statute at issue in *Greyeagle* authorized special series plates that could "be readily identified by traffic law enforcement officers," but did not au-

---

1. Even if he had not known, he would be deemed to have submitted: citizens of Minnesota are presumed to know the law. *State v. Calmes*, 632 N.W.2d 641, 648 (Minn.2001).

thorize stops based solely on these plates. *Id.* at 328 (quoting Minn.Stat. § 168.041, subd. 6 (1994)). In *Greyeagle,* we contrasted the Minnesota statute with a Washington state statute that specifically authorized an officer to stop a vehicle with special series license plates for the sole purpose of determining whether the driver had a valid driver's license. *Id.* We noted then that the Minnesota statute "does not suggest the condition of use that is provided in the Washington statute." *Id.* at 328.[2]

After the *Greyeagle* decision, the Minnesota legislature amended the statute by adding section 168.0422:

> A peace officer who observes the operation of a motor vehicle within this state bearing special series registration plates issued under section 168.041, subdivision 6, * * * may stop the vehicle for the purpose of determining whether the driver is operating the vehicle lawfully under a valid driver's license.[3]

■ The constitutionality of Minn.Stat. § 168.0422 was challenged in *State v. Baumann,* 616 N.W.2d 771 (Minn.App.2000) (upholding conviction when vehicle stop was based on both officer's observation of special series license plates and officer's hearing report that driver's license of vehicle's owner had been cancelled), *review denied* (Minn. 15 Nov. 2000). *Baumann*

held that the additional information as to the owner's cancelled driver's license provided a reasonable suspicion of criminal activity to justify the stop. *Id.* at 774. Noting that the conviction could be sustained on that basis and that this court considers constitutional questions only when necessary to dispose of the case before it, *Baumann* did not address the constitutionality of Minn.Stat. § 168.0422. *Id.* at 773–74.[4]

■ However, *Baumann* is distinguishable: in this case, the deputy testified that the special series license plates provided his only basis for the stop. Therefore, we must address the constitutionality of Minn. Stat. § 168.0422. Its language is almost identical to the Washington statute cited in *Greyeagle;* it permits stops to determine whether a driver has a valid driver's license to be based solely on an officer's observation of special series license plates. *Greyeagle* interpreted this language as making receipt of special series license plates conditional on submission to routine police stops. *Id.* at 328. The constitutionality of the Washington statute has been upheld.

In order for an investigative stop to be valid under either our state or federal constitutions, the officer must have "spe-

---

2. Because Minnesota had no analogous statute when *Greyeagle* was decided, that case did not address "whether states may statutorily provide that special driving privileges be granted on the condition that the user enjoys lesser constitutional rights." *Id.* at 328, n. 3.

3. This language is similar to 1987 Wash. Laws, ch. 388 § 2, quoted in *Greyeagle,* 541 N.W.2d at 328, "Any officer who sees a vehicle being operated with marked license plates may stop the vehicle for the sole purpose of ascertaining whether the driver of the vehicle is operating it in violation of [statutes prohibiting operation of a vehicle without a valid license]."

4. A special concurrence to *Baumann* stated that Minn.Stat. § 168.0422 was "a legislative attempt to specifically overrule the holding in *Greyeagle.*" *Id.* at 776 (Randall, J., concurring). Appellant relies on this language to argue that the statute is unconstitutional. However, a concurrence does not speak for the court and is not precedent. *See Nitz v. Nitz,* 456 N.W.2d 450, 453 (Minn.App.1990) (dicta not the judgment of the court and not binding). Appellant's reliance on the concurrence is misplaced, particularly in light of the majority's specific determination that the case could be disposed of without addressing the issue of constitutionality. *See Baumann,* 616 N.W.2d at 773–74.

cific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) * * *.

* * * *

[T]he presence of the special tab on the license plate was a specific and articulable fact from which the officer could reasonably infer that there was a substantial possibility the driver of the vehicle did not possess a valid license.

*City of Seattle v. Yeager*, 67 Wash.App. 41, 834 P.2d 73, 75–76 (1992). We agree with the rationale of the Washington Supreme Court. Accordingly, we hold that Minn. Stat. § 168.0422 is not unconstitutional.[5]

## DECISION

Because appellant implicitly consented to routine stops of his vehicle when he applied for and displayed special series license plates and that Minn.Stat. § 168.0422 (1998) is constitutional, we affirm the district court's finding that the stop of appellant's vehicle was valid and reverse the district court's finding that section 168.0422 is unconstitutional.

**Affirmed in part and reversed in part.**

---

5. Appellant also relies on *Ascher v. Comm'r of Pub. Safety*, 519 N.W.2d 183, 187 (Minn.1994) (holding that police roadblocks were unconstitutional because Minnesota constitution requires individualized suspicion of wrongdoing before a stop). But *Ascher* is distinguishable: it involved stopping *all* vehicles at a roadblock. Minn.Stat. § 168.0422 permits stops only of vehicles bearing special series plates.