**STATE of Minnesota, Respondent,**

v.

**John Mark COLOSIMO, Appellant.**

No. C7–01–2181.

Court of Appeals of Minnesota.

July 23, 2002.

Mike Hatch, Attorney General, St. Paul, and Jeffrey M. Vlatkovich, Hibbing, for respondent.

John Mark Colosimo, Virginia, pro se appellant.

Considered and decided by HALBROOKS, Presiding Judge, KLAPHAKE, Judge, and HANSON, Judge.

## OPINION

HANSON, Judge.

Appellant challenges his conviction of refusal to allow inspection of a boat, arguing that he was unlawfully stopped by a conservation officer; that the officer did not have probable cause to inspect the boat; and that the officer's request to inspect the boat was an unlawful seizure. We reverse.

## FACTS

Pro se appellant John Mark Colosimo, an attorney, and four others were in Colosimo's boat as it was being towed to a boat landing by a truck driven by Sean Oveson. When Oveson stopped at the landing, Conservation Officer Lloyd Steen, who was standing nearby, approached the boat and asked Colosimo if they had been fishing. Colosimo said they had and discussed the types and amounts of fish they had caught and were transporting. Officer Steen asked to see the fish. Colosimo refused, stating that Officer Steen had stopped the fishing party without reasonable suspicion for doing so and that Officer Steen did not have probable cause to inspect the boat. When Colosimo asked Officer Steen to articulate a reason for stopping and detaining his fishing party, and to explain why he had a right to inspect the boat, Officer Steen replied that he did not need a reason and, because he knew they had fish on board, he had a right to inspect the fish. After a lengthy conversation and Colosimo's continued refusal to allow the inspection, Officer Steen ticketed Colosimo for refusal to allow inspection of a boat. Colosimo and his party then left the scene.

Colosimo was charged with hindering and obstructing an officer in the performance of his official duties, in violation of Minn.Stat. § 97A.251, subds. 1 and 2 (1998), and refusal to allow inspection of a boat, in violation of Minn.Stat. § 97A.251,

subd. 1(3). Colosimo moved to suppress the evidence of his refusal and to dismiss both charges, alleging that the evidence was acquired by Officer Steen's illegal seizure of him. The district court dismissed the obstruction charge, holding that Colosimo acted in good faith to assert his constitutional rights and no physical obstruction occurred, citing *State v. Tomlin,* 622 N.W.2d 546 (Minn.2001). But the court denied the motion as to the refusal charge, finding that Officer Steen's conversation with Colosimo did not constitute a seizure because Oveson had already stopped the truck.

The parties stipulated to the facts in the omnibus hearing transcript. The district court found Colosimo guilty of refusal to allow inspection of a boat. While the district court agreed that Officer Steen could not have stopped Colosimo without reasonable suspicion, it reasoned that Officer Steen had a right to inspect the fish when he approached the stopped vehicle and learned there were fish on board. Colosimo appealed.

## ISSUE

Is a boat owner guilty of the crime of refusal to allow inspection of a boat when the conservation officer does not have probable cause to request the inspection?

## ANALYSIS

■ Our review of the district court's denial of the motion to dismiss is de novo. *See State v. Linville,* 598 N.W.2d 1, 2 (Minn.App.1999) (reviewing dismissal for lack of probable cause); *see also State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999) (stating that courts may independently review the facts and determine whether the district court erred by not suppressing evidence). Whether a statute has been properly construed is a question of law,

also subject to de novo review. *State v. Nerz,* 587 N.W.2d 23, 24–25 (Minn.1998).

## I

Colosimo was found guilty of violating Minn.Stat. § 97A.251, subd. 1(3) (1998), which states:

A person may not:

\* \* \* \*

(3) refuse to allow inspection of a motor vehicle, boat, or other conveyance used while taking or transporting wild animals.

"Wild animals" is defined to include "fish." Minn.Stat. § 97A.015, subd. 55 (1998).

We first address the question of whether the state must prove, as a predicate to the crime of refusal to allow inspection, that the officer had probable cause to request the inspection. Although the description of the crime in Minn.Stat. § 97A.251, subd. 1(3) does not expressly include that predicate, we conclude that it must be implied because of constitutional and other statutory requirements.

### Constitutional Requirements

■ We analyze a conservation officer's request to inspect fish in a boat under the constitutional standards applicable generally to searches and seizures. The Minnesota Supreme Court has consistently held that the Fourth Amendment's prohibition against unreasonable searches and seizures applies to searches made by conservation officers. *State v. Richards,* 284 N.W.2d 549, 551 (Minn.1979); *State v. Sorenson,* 441 N.W.2d 455, 459 (Minn.1989); *see also State v. Krenz,* 634 N.W.2d 231, 234 (Minn.App.2001) (holding that conservation officer violated the Fourth Amendment when he entered defendant's fish house without consent, a warrant, probable cause or any articulable basis for suspicion).

Further, we have held that an owner of a vehicle has a reasonable expectation of privacy sufficient for Fourth Amendment protections to attach to the vehicle. *See State v. Nace,* 404 N.W.2d 357, 360–61 (Minn.App.1987), *review denied* (Minn. June 25, 1987) (stating that an automobile owner's expectation of privacy in an automobile is somewhat less than in a home, but a warrantless search of an automobile still must be supported by probable cause); *see also Carroll v. United States,* 267 U.S. 132, 147–55, 45 S.Ct. 280, 283–86, 69 L.Ed. 543 (1925) (explaining that probable cause is required to search an owner's automobile because of the owner's reasonable expectation of privacy). We see no reason to distinguish between an automobile and a boat, both of which are vehicles that transport people and goods in a regulated environment.[1]

If, under these constitutional standards, a conservation officer must have probable cause to believe that a crime has been committed in order to justify a warrantless search of a boat without the owner's consent, then it follows that any evidence obtained by an inspection of a boat without consent would be subject to suppression on grounds that the officer did not have probable cause to search the boat. That being so, could the legislature constitutionally require a person to consent to a warrantless search of protected property without probable cause, or make it a crime for a person to refuse such consent? Although the narrow words of Minn.Stat. § 97A.251, subd. 1(3), could be read to do just that, when we construe that section to be consistent with the constitution, we conclude that it implies a predicate that the officer requesting inspection has either a search warrant or probable cause to support the request.

Minn.Stat. § 645.17(3) (1998) (providing the presumption that the legislature does not intend to violate the constitution of the United States or of this state).

*Other Statutory Requirements*

This conclusion, that the crime of refusal to permit inspection of a boat implies the predicate that the officer has a warrant or probable cause to support the request, is reinforced by the statutory provisions that authorize inspections under the game and fish laws. Minn.Stat. § 97A.215, subd. 1(b) (1998), states:

> When an enforcement officer has *probable cause* to believe that wild animals taken or possessed in violation of game and fish laws are present, the officer may:
>
> (1) enter and inspect any place or vehicle; and
>
> (2) open and inspect any package or container.

(Emphasis added.)

Construing the provisions establishing the crime of refusal to allow inspections of a boat, under Minn.Stat. § 97A.251, subd. 1(3), together with the limitations placed on the authority of an enforcement officer to conduct an inspection only upon probable cause, we conclude that a boat owner cannot be convicted of the crime of refusal to allow inspection of a boat unless the state can prove that the officer had probable cause to request that inspection.

**II**

At oral argument, the state asserted that probable cause was not a necessary predicate to a request to inspect the boat because of the regulated activity exception. Some courts have recognized that a

---

**1.** Such a distinction is further blurred under our facts, where the boat is being towed by a    motor vehicle.

person engaged in a pervasively regulated activity may have a reduced expectation of privacy and, therefore, certain searches of the place where that activity occurs may not be unreasonable under the constitution, even in the absence of probable cause. *See, e.g., New York v. Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (holding reasonable warrantless inspections of junkyards because vehicle dismantlers constitute "closely regulated" industry). The state argues that recreational fishing has been regulated by the requirement of a fishing license and by the imposition of specified restrictions.

■ We have already rejected the state's argument as applied to recreational fishing in Minnesota. *Krenz,* 634 N.W.2d at 236–37 (declining to accept the state's argument that warrantless searches of fish houses are justified to enforce the regulatory scheme for recreational fishing); *see also State v. Larsen,* 637 N.W.2d 315, 321 (Minn.App.2001) ("a citizen accused of stealing ... fish has the same constitutional guarantees of fairness and due process as citizens accused of other crimes"), *review granted* (Minn. Mar. 19, 2002).[2] As we said in *Krenz,* warrantless searches conducted to enforce regulatory schemes are only reasonable in the context of a pervasively regulated business activity, not a personal recreational activity. 634 N.W.2d at 236. *Krenz* dealt with a warrantless search of a fish house and it could be argued that a person in a fish house had a greater expectation of privacy than one in a boat. But the limitation placed by legislature on the authority of an officer to inspect applies equally to a "place" and a "vehicle." Minn.Stat. § 97A.215, subd. 1(b)(1). This effectively establishes that

persons in a boat have the same reasonable expectation of privacy. Thus, unless a person is using a boat for a pervasively regulated business activity, the statute requires probable cause to enter and inspect a boat.

The state suggests that this construction of the statute places an unreasonable burden on conservation officers. We acknowledge the difficulty a conservation officer faces in acquiring probable cause for fishing violations that are committed essentially in private. And, while we agree that the analysis of constitutional requirements and the construction of the statute should not simply be mechanistic, we are not persuaded that public policy concerns raised by the state can override otherwise applicable constitutional protections or statutory limitations. Further, we cannot conclude that the legislature has clearly expressed an intent to prefer the enforcement of the fish laws to individual privacy rights. We have required such a clear expression in other licensing contexts.

For example, in *State v. Greyeagle,* 541 N.W.2d 326 (Minn.App.1995), we considered whether the application for and display of a special series license plate, to an owner who has a limited driver's license, implies consent by the driver to stops of the vehicle based solely on the plates, without some independent reasonable suspicion or probable cause. We held that it did not, noting that the statute did not expressly authorize stops based solely on the plates. *Id.* at 328. After *Greyeagle,* the legislature amended the statute to provide that specific authorization. In *State v. Henning,* 644 N.W.2d 500, 503 (Minn. App.2002), we construed the amended stat-

---

**2.** Other jurisdictions have also rejected such arguments. *See, e.g., People ex rel. Attorney General v. Younger Mun. Judge,* 327 Mich. 410, 42 N.W.2d 120, 125 (1950) (rejecting argument that a fishing license is distinguishable from a driver's license); *Sitz v. Dep't of State Police,* 443 Mich. 744, 506 N.W.2d 209, 222 (1993) (rejecting regulatory argument).

ute to establish the driver's implied consent to stops based solely on the plates.

■ In contrast here, Minn.Stat. Ch. 97A does not expressly authorize a conservation officer to inspect a boat based solely on the fact that a fishing license is required to take or transport fish, or because there are fish in the boat. To the contrary, the statute conditions the conservation officer's inspection authority to situations where the officer has "probable cause." Minn.Stat. § 97A.215, subd. 1(b). Thus, as in *Greyeagle*, we need not address the ultimate question, "whether states may statutorily provide that [fishing licenses] be granted on condition that the user enjoys lesser constitutional rights." *See Greyeagle*, 541 N.W.2d at 328 n. 3 (stating that the question of an officer's statutory power to make suspicionless stops need not be addressed in the absence of specific statutory authority to do so).

## III

The state argues that if probable cause is required, Colosimo's refusal to allow the inspection, together with knowledge that fish were being transported in the boat, gave Officer Steen sufficient probable cause to believe that Colosimo violated fish laws and that there was a fair probability that evidence of the violation was in the boat. Officer Steen testified that in the previous 21 years, no one had ever refused his request to inspect fish in a boat.

■ But the "[Fourth] Amendment gives [the occupant] a constitutional right to refuse to consent to entry and search," where the officer lacks probable cause. *United States v. Prescott*, 581 F.2d 1343, 1350–51 (9th Cir.1978). Passive refusal cannot be a crime, nor can it be evidence of a crime. *Id.* at 1351. Therefore, Colo-

simo's refusal to allow Officer Steen to inspect the boat did not give Officer Steen probable cause to believe that Colosimo had incriminating evidence on the boat. A contrary conclusion would effectively eliminate the requirement of probable cause from the law because an officer could always avoid the requirement by simply requesting inspection: if the boat owner consents, probable cause would not be required, and if the boat owner refuses, the officer would use that refusal to supply probable cause.

Officer Steen admitted that he had no probable cause to inspect the boat when he approached the boat, and Colosimo's refusal could not give Officer Steen probable cause.

## DECISION

We do not address Colosimo's other arguments, concerning whether Officer Steen had reasonable suspicion to effectuate an investigatory stop or to seize the boat or its occupants. The dispositive issue before us, when considering Colosimo's conviction for refusal to allow inspection, is whether Officer Steen was required to have probable cause to request inspection of Colosimo's boat. We hold that Officer Steen was required to have probable cause to request inspection of the boat; that he did not have probable cause to make such request; and that, absent probable cause to request inspection, Colosimo cannot be convicted for refusal to allow inspection.