OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Appellant Jamal Jones appeals the decision of the Belmont County Court of Common Pleas denying his motion to suppress and sentencing him to the maximum prison term for a fourth degree felony. The issues we must resolve are: (1) whether an officer had reasonable suspicion to initiate a traffic stop of a vehicle after discovering the owner's license had been suspended; and, (2) whether the trial court properly addressed all of the necessary factors when sentencing Jones' to the maximum sentence for a fourth degree felony. Because we answer both of these questions in the affirmative, the decision of the trial court is affirmed.
 {¶ 2} First, when an officer runs a license plate and that plate comes back as being registered to a person who is not permitted to drive, that officer can reasonably infer that the owner is driving the vehicle. Accordingly, the trial court properly decided that the officer had reasonable suspicion to stop the vehicle. Second, the trial court properly sentenced Jones to a prison term for his conviction since it complied with the mandates of felony sentencing law. The record clearly demonstrated that Jones was a repeat offender who showed little or no remorse for his crimes.
 FACTS {¶ 3} On August 28, 2002, Officer Studence received a dispatch to be on the lookout for a black motor vehicle coming from West Virginia across the Wheeling Island Bridge into Bridgeport, Ohio. The Officer was given the license plate of the vehicle, was told the driver was a black male and that the car may contain weapons and drugs. This information was apparently received by an informant in West Virginia who initially contacted the West Virginia police department.
 {¶ 4} About one minute after that dispatch, Officer Studence spotted a black vehicle coming over the bridge. He ran the plates and discovered that the license of the car owner, Jamal Jones, was under suspension. Officer Studence then initiated a traffic stop. Jones was driving the vehicle and James Stubbs was his passenger. After the car came to a stop, both men exited the car and Officer Studence advised them to get back into the car. Stubbs took off running while Jones remained in the car. Stubbs then ran to a dumpster and threw something onto the ground. A baggie containing a white powdery substance was later found by the dumpster.
 {¶ 5} Jones was arrested and an inventory search was performed on his car. Studence found a baggie containing a white powdery substance in the passenger side floor area and he found a second baggie containing a white powdery rock in the spare tire compartment.
 {¶ 6} Jones was indicted by the Belmont County Grand Jury for possession of crack cocaine, a felony of the second degree. Jones moved to suppress the evidence found in the vehicle. After a hearing the trial court overruled the motion. Jones entered into a plea agreement which provided for the amendment of his indictment to a fourth degree felony drug possession. A sentencing hearing was held and Jones was sentenced to a maximum term of 18 months.
 {¶ 7} Jones has presented this court with two assignments of error which will be addressed for clarity sake in reverse order, the second of which alleges:
 {¶ 8} "The Court erred when it denied Defendant's Motion to Suppress as there was no probable cause to stop the Defendant's vehicle."
 {¶ 9} Jones' challenge to the traffic stop focuses primarily on the reliability of the information received from the West Virginian informant regarding the alleged drugs and guns in Jones' vehicle. However, we need not reach the merits of that challenge since the suspected suspended license was sufficient grounds to stop the vehicle.
 {¶ 10} It must be emphasized that a stop and an arrest are wholly distinct concepts which are supported by wholly distinct standards. It is well settled that an officer does not need probable cause to make a traffic stop. Dayton v. Erickson
(1996), 76 Ohio St.3d 2, 11-12 (also stating that ulterior motives are irrelevant). Rather, the officer needs only reasonable suspicion. Id. To justify an investigatory stop of a vehicle, the officer must demonstrate specific and articulable facts which, when considered with the rational inferences that can be drawn, justify a reasonable suspicion that the individual to be stopped may be involved in criminal activity, including minor traffic violations. Id. See, also, Terry v. Ohio (1968),392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889.
 {¶ 11} Here, the officer had a reasonable suspicion that Jones was driving under suspension. Multiple courts have held that an officer may run any license plate it chooses and when that plate comes back as being registered to a person who is not permitted to drive, the officer can reasonably infer that the owner is driving the vehicle. This is especially true when the driver's race and gender match that given in the physical description of the registered owner. See, e.g., Rocky River v.Saleh (2000), 139 Ohio App.3d 313, 327; State v. Marker
(1998), 130 Ohio App.3d 200, 202; State v. Epling (1995),105 Ohio App.3d 663, 665, citing State v. Kavalec (Dec. 22, 1993), 9th Dist. No. 2246-M; State v. Owens (1991),75 Ohio App.3d 523, 525, 599 N.E.2d 859.
 {¶ 12} Most importantly, this court has held: "Where an officer knows that the owner of a vehicle has a suspended operator's license and draws the rational inference that the owner of the vehicle is likely to be operating the vehicle, there exists sufficient reasonable suspicion to justify an investigatory stop." State v. Webb (June 30, 1995), 7th Dist. No. 92-B-65, quoting Tallmadge v. McCoy (1994),96 Ohio App.3d 604. See, also, State v. Maston (June 4, 2003) 7th Dist. No. 02 CA 101.
 {¶ 13} In the present case, Studence ran the registration of the vehicle and discovered that the owner's license was suspended. Pursuant to caselaw from this court and other districts, the trial court did not err in determining that the officer possessed reasonable suspicion to stop Jones's vehicle. Jones' second assignment of error is meritless.
 {¶ 14} Jones' remaining assignment of error alleges:
 {¶ 15} "The Court erred as the mitigating factors and seriousness and recidivism factors were not properly considered."
 {¶ 16} Jones argues that the trial court failed to follow the sentencing guidelines set forth in R.C. 2929.12. In 1995, the Ohio General Assembly adopted Am.Sub.S.B. No. 2, a comprehensive act which restructured Ohio's felony sentencing law. The adoption of Am .Sub.S.B. No. 2 altered appellate review of felony sentencing. "Prior to the adoption of Am.Sub.S.B. No. 2, an appellate court did not disturb a trial court's imposition of sentence when it was within the statutory limits absent an abuse of discretion. Additionally, if the record was silent, the sentencing court was presumed to have considered the seriousness factors as well as any aggravating or mitigating circumstances."State v. Pickford (Feb. 22, 1999), 7th Dist. No. 97-JE-21; see, also, State v. Huff (Nov. 20, 2000), 7th Dist. No. 98-JE-23.
 {¶ 17} Felony sentences are no longer reviewed under the abuse of discretion standard and this court no longer presumes that the sentencing court considered the seriousness or recidivism factors set forth in R.C. 2929.12 when it is presented with a silent record. Id.; R.C. 2953.08(G)(1)-(2); R.C. 2929.14. The guidelines and procedures for appellate review of felony sentences are found in R.C. 2953.08. R.C. 2953.08(G)(2) provides that a reviewing court may increase, reduce or otherwise modify a felony sentence, or may vacate the sentence and remand the matter to the trial court for resentencing, if it clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law. This court is also required to remand the case for resentencing if it determines that the trial court failed to make the findings required by R.C. 2929.13(B) with respect to sentences imposed for fourth and fifth degree felonies. R.C. 2953.08(G)(1).
 {¶ 18} Here, Jones argues that the trial court failed to thoroughly consider all of the sentencing factors listed in R.C.2929.12. R.C. 2929.12(A) states:
 {¶ 19} "(A) Unless otherwise required by section 2929.13 or2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing."
 {¶ 20} The trial court is not required to use special talismanic language to satisfy the requirement that it consider the seriousness and recidivism factors in R.C. 2929.12. State v.Arnett (2000), 88 Ohio St.3d 208, 215. A trial judge may satisfy his or her duty under R.C. 2929.12 with nothing more than a rote recitation that the applicable factors were considered. Id.
 {¶ 21} In this case, the trial court specifically stated in its sentencing entry that it considered the factors listed in R.C. 2929.12. With regards to the factors listed in R.C.2929.12(D), indicating that the offender is likely to commit future crimes, the trial court further elaborated that Jones had been previously imprisoned and is currently serving one year for trafficking in controlled substances. The trial court also pointed out that, as a juvenile, Jones spent four years in DYS for seven counts of possession of drugs. As an adult, Jones had been convicted of unauthorized use of a motor vehicle and failure to comply as well as trafficking in drugs. The trial court then emphasized that Jones had been out on bond from Cuyahoga County when he committed the subject offense and had shown no remorse. In light of these findings, the trial court found there to be no applicability of the mitigating factors listed in R.C. 2929.12
(E). Accordingly, it appears the trial court properly considered the factors listed in R.C. 2929.12. However, our court's analysis does not end here.
 {¶ 22} R.C. 2929.12 (A) also requires the trial court to consider the sentencing factors in R.C. 2929.13 and 2929.14 when applicable. R.C. 2929.19(B)(2)(a) further requires the sentencing court to give its reasons for imposing a prison term for a fourth or fifth degree felony and to list any factors from R.C.2929.13(B)(1) which the court finds applicable.
 {¶ 23} In this case, the trial court properly found R.C.2929.13(B)(1)(g) and (h) are applicable since Jones had previously served a prison term and he committed the present offense while out on bond. The court went on to explain why a prison sentence was necessary:
 {¶ 24} "It is readily apparent that the offender has failed to favorably respond to sanctions previously imposed. Rather, he persists in violating the law by possessing a significant amount of a highly addictive controlled substance from which, as stated above, his intent to traffic can be inferred. There simply is no demonstration of remorse. And circumstances, until today, surrounding this offense lead the court to believe that such activity shall recur unless the offender is severely sanctioned." (Tr. p. 7)
 {¶ 25} The trial court complied with the mandates of 2929.19
when deciding to impose a prison sentence for a fourth or fifth degree felony. Now, we must determine whether the trial court properly imposed the maximum sentence.
 {¶ 26} R.C. § 2929.14(C) sets out the final requirement for the sentencing court when imposing a maximum prison term:
 {¶ 27} "(C) Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 28} In this case, the trial court found that although the offense charges Jones of possession of one to five grams of crack cocaine, the amount of crack cocaine confiscated from the Jones' vehicle was in excess of ten grams. The trial court explained:
 {¶ 29} "Considering the large amount of crack, and the circumstances that led to the arrest of this offender, which this court has reviewed in the incident report attached to the PSI, the crack was not for personal use, but rather this offender is a heavy trafficker in crack cocaine."
 {¶ 30} The trial court continued:
 {¶ 31} "the court finds that this offender committed the worst form of the offense, coming to Belmont County to spread his highly addictive poison for others for financial gain and in such an amount as to be deemed a heavy trafficker, and further that his past record, combined with his attitude as conveyed by the PSI, establish that this offender poses the greatest likelihood of committing future crimes."
 {¶ 32} Because the trial court concluded on the record and in the sentencing entry that Jones had committed the worst form of the offense and poses the greatest likelihood of recidivism and supported these conclusions with findings on the record, the trial court properly sentenced Jones to the maximum for the offense. Jones' final assignment of error is meritless.
 {¶ 33} For the foregoing reasons, the judgment of the trial court is affirmed.
Judgment affirmed.
Waite, P.J., and Donofrio, J., concur.